FILED
CLERK, U.S. DISTRICT COURT

MAY 3 0 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                                        DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2017 Grand Jury

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ARMAN GABAEE, aka "Arman
  Gabay,"

        Defendant.

CR No. 18-CR00331-GW

I N D I C T M E N T

[18 U.S.C. §§ 1343, 1346: Honest
Services Wire Fraud; 18 U.S.C.
§ 666(a)(2): Federal Program
Bribery]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    Defendant ARMAN GABAEE, also known as "Arman Gabay"
("GABAEE"), was a real estate developer who conducted business with
Los Angeles County ("County"), within the Central District of
California.  Defendant GABAEE was the co-managing partner and co-
founder of the Charles Company, a real estate development firm that
developed and maintained commercial and residential real estate
projects.  Defendant GABAEE was also a partner of the California
limited partnership M&A Gabaee, among other entities.  Defendant

GABAEE's business activities included obtaining contracts with the County, whereby the County would lease property owned by defendant GABAEE or one of his companies.

2.    Cooperating Witness 1 ("CW1") was a public official employed by the County in its Real Estate Division.  As an agent of the County, CW1 negotiated leases between private property owners, like defendant GABAEE, and County departments or agencies.  While employed by the County, CW1 requested and received proposals from private property owners who wanted to lease space to the County. Once a property was identified for a County department or agency in need of space, CW1 negotiated lease terms and drafted lease agreements, or directed others to do so.

3.    As a public official employed by the County, CW1 owed a fiduciary duty to the citizens of the County and to CW1's employer, the County, to perform the duties and responsibilities of CW1's office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

4.    The County was a local government that received, every calendar year between 2010 and 2017, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.  In fact, multiple County departments or agencies, including but not limited to the Department of Public Social Services ("DPSS"), received Federal assistance that exceeded $10,000 every calendar year between 2010 and 2017.

COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 1343, 1346]

Beginning in or about 2010 or 2011, and continuing until on or about April 25, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ARMAN GABAEE, also known as ("aka") "Arman Gabay" ("GABAEE"), together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the citizens of Los Angeles County ("County") and the employer of Cooperating Witness 1 ("CW1"), the Real Estate Division of the County, of their right to the honest services of CW1 by means of bribes and kickbacks and the concealment of material facts.

A.   THE SCHEME TO DEFRAUD

The scheme to defraud operated, in substance, in the following manner and by the following means:

Monthly Bribe Payments

1.   Beginning in or about 2010 or 2011, and continuing until on or about April 11, 2017, defendant GABAEE paid CW1 bribes and kickbacks of approximately $1,000 about every month, in exchange for, among other things: (a) CW1 providing non-public County information to defendant GABAEE; (b) CW1 resolving issues between defendant GABAEE and County departments or agencies on terms favorable to defendant GABAEE; and (c) CW1 helping to secure County leases for defendant GABAEE and negotiating terms in those leases that were beneficial to defendant GABAEE.

///

///

3

2.  On or about the following dates, during recorded meetings, defendant GABAEE paid CW1 the following cash bribes and kickbacks:

    a.  December 20, 2016 - $1,500;

    b.  December 30, 2016 - $1,500;

    c.  January 27, 2017 - $1,000;

    d.  March 1, 2017 - $1,000;

    e.  March 31, 2017 - $900; and

    f.  April 11, 2017 - $100 (collectively, the "monthly bribe payments").

The Hawthorne Mall and $45 Million DPSS Lease

3.  In or around 2016 and 2017, one of the County leases defendant GABAEE sought was for the Hawthorne Mall, aka the "Hawthorne Plaza" or "Hawthorne Plaza Shopping Center," located in Hawthorne, California.  Through one of his companies, defendant GABAEE owned and was redeveloping the Hawthorne Mall.  Defendant GABAEE sought a contract through which the County would lease space from defendant GABAEE for DPSS and other County departments or agencies in the Hawthorne Mall (the "DPSS Lease").  As drafted, the DPSS Lease anticipated a term of 10 years and payments to defendant GABAEE, in the form of rent and tenant improvements reimbursable by the County, in excess of $45 million.

4.  Beginning in or about, but no later than, December 2016 and continuing until on or about April 25, 2017, defendant GABAEE attempted to bribe and did bribe CW1 with (a) the monthly bribe payments and (b) the attempted purchase of a residential property in Northern California for CW1's use, listed for sale at over $1,000,000, in exchange for CW1 performing various official acts related to the DPSS Lease.  Those official acts included, among other

4

things: (a) CW1 exerting pressure on County departments to complete
and submit Space Request Evaluations ("SREs"), an official request
for office space that would have allowed CW1 to begin more formal
lease negotiations with defendant GABAEE; (b) CW1 pretending to
publically engage in the normal County bidding process for County
leases, but in fact, promising defendant GABAEE that CW1 would give
defendant GABAEE favorable treatment to ensure that defendant GABAEE
received the DPSS Lease; (c) CW1 exerting pressure on a subordinate
employee ("County Employee 1") in the Real Estate Division to draft
the DPSS Lease for defendant GABAEE, and to do so expeditiously and
no later than August 2017; (d) CW1 using CW1's influence to pressure
County Employee 1 to draft the DPSS Lease in such a way that it
"looked good on paper," meaning that it did not appear suspect or
raise concerns; (e) CW1 using CW1's influence to pressure DPSS to
agree to the terms in the DPSS Lease; and (f) CW1 ultimately
obtaining the signed DPSS Lease for defendant GABAEE.

5.    On or about December 19, 2016, during a recorded telephone
call, defendant GABAEE told CW1 that he had to "catch up" with CW1 to
talk about "Hawthorne." Defendant GABAEE said, "things have heated
up" and "we need to [] get that lease [the DPSS Lease] going."
Defendant GABAEE and CW1 agreed to meet the following day.

6.    On or about December 20, 2016, during a recorded meeting,
defendant GABAEE told CW1, "you need to get the SREs," (which would
allow defendant GABAEE and CW1 to begin more formal lease
negotiations for the Hawthorne Mall and DPSS Lease). Following this
discussion, defendant GABAEE paid CW1 a $1,500 cash bribe.

7.    On or about December 30, 2016, during a recorded meeting,
defendant GABAEE paid CW1 another $1,500 cash bribe. In reference to

the Hawthorne Mall and DPSS Lease, defendant GABAEE asked, "can we just start negotiating that, or no?" CW1 responded that CW1 did not yet "have the SREs." Defendant GABAEE warned that he was "desperate" and needed the SREs and DPSS Lease "badly." CW1 promised to try to "get DPSS to respond" regarding its SRE.

8. On or about January 27, 2017, during a recorded meeting, defendant GABAEE paid CW1 a $1,000 cash bribe and offered to purchase a property in Northern California for CW1, in exchange for CW1 helping to secure the DPSS Lease for defendant GABAEE. Defendant GABAEE said, "If you want to do Hawthorne, we can do this. Remember you wanted to buy that ranch?" CW1 laughed. Defendant GABAEE continued, "I'm serious. I'm not joking with you. You do Pomona [another property believed to be owned by defendant], it only gets better."

9. On or about January 30, 2017, during a recorded telephone call, defendant GABAEE and CW1 briefly discussed "the Hawthorne deal" and defendant GABAEE's offer to "do something up North," i.e. to purchase a property in Northern California as a bribe for CW1. Defendant GABAEE suggested that the two meet in person and said, "I don't want to talk on the phone."

10. On or about February 2, 2017, during a recorded meeting, defendant GABAEE and CW1 discussed defendant GABAEE's purchase of the Northern California property for CW1. CW1 asked, "how are we going to make it work for Northern California?" Defendant GABAEE responded that he was "ready" and would "make it work." Defendant GABAEE said, "let me go ask my help and see what I can find." He told CW1 to give him an "idea, like on a map" of a specific location in Northern

1   California to look for potential properties.  CW1 suggested "the
2   Santa Rosa area."

3       11.  On or about March 1, 2017, during a recorded meeting,
4   defendant GABAEE paid CW1 another $1,000 cash bribe in exchange for,
5   among other things, CW1 helping to secure the DPSS Lease.  CW1
6   offered to "push" DPSS and County Employee 1 to get the DPSS Lease
7   and deal for the Hawthorne Mall "going."  CW1 promised a "whole new
8   lease [the DPSS Lease]...before August [2017]" and would make sure
9   the deal "look[ed] good on paper," so as to avoid raising any
10  concerns or suspicion.  In exchange, defendant GABAEE reassured CW1
11  that he was looking "hot and heavy" for a property to purchase in
12  Northern California for CW1.  He said, "I'm going to start getting
13  really aggressive with the North."

14      12.  The next day, on or about March 2, 2017, Business Associate
15  1, an individual who worked with defendant GABAEE and helped
16  defendant GABAEE locate properties for sale in Northern California,
17  emailed defendant GABAEE approximately 25 real estate listings for
18  properties in and around the Santa Rosa area in Northern California.

19      13.  On or about March 8, 2017, during a recorded meeting,
20  defendant GABAEE handed CW1 approximately 12 real estate listings for
21  properties in and around the Santa Rosa area that were on the market
22  ranging in price from $899,000 to $1,288,000.

23      14.  On or about March 15, 2017, during a recorded meeting,
24  defendant GABAEE offered to purchase a property on Barnes Road in
25  Santa Rosa, California (the "Barnes Road Property") as a bribe for
26  CW1.  The Barnes Road Property was among the listings defendant
27  GABAEE had offered CW1 a week earlier, on or about March 8, 2017.
28  The list price for the Barnes Road Property was $1,199,000.  In an

1  effort to conceal defendant GABAEE's purchase of the property for
2  CW1, defendant GABAEE stated that the purchase "ha[d] to be in some
3  kind of an LLC" so that defendant GABAEE and CW1 could appear to
4  "have nothing to do with it."

5      15.  On or about March 24, 2017, during a recorded telephone
6  call, defendant GABAEE told CW1 that the Barnes Road Property was
7  already contracted to be sold to another buyer.  Defendant GABAEE
8  stated that he was "trying to put a back-up [offer] on it."  CW1
9  offered to "look at something else," and defendant GABAEE told him to
10 "take a look at that list [of real estate listings defendant GABAEE
11 had given CW1 on or about March 8, 2017]."

12     16.  On or about April 6, 2017, during a recorded telephone
13 call, CW1 told defendant GABAEE that CW1 had "good news."  "I stuck
14 my neck out, pushed hard, had a meeting yesterday," CW1 said.
15 "Hawthorne can move forward," CW1 stated.  "I'm gonna move forward
16 with the 10-year [DPSS Lease]."  CW1 and defendant GABAEE then
17 discussed defendant GABAEE's efforts to purchase a property in
18 Northern California for CW1.  Defendant GABAEE said, "I am fully
19 engaged on that."

20     17.  On or about April 6, 2017, following defendant GABAEE's
21 telephone call with CW1, defendant GABAEE spoke with Business
22 Associate 1 during a recorded telephone call.  Defendant GABAEE and
23 Business Associate 1 discussed the urgent need to locate a property
24 in Northern California.  Defendant GABAEE told Business Associate 1
25 to see if "there's a way we can get that house [the Barnes Road
26 Property]."  Business Associate 1 told defendant GABAEE that the
27 Barnes Road Property already had a back-up offer and had sold.
28 Business Associate 1 promised to keep defendant GABAEE informed about

1    any other properties that might become available.  Defendant GABAEE

2    urged Business Associate 1 to be discrete regarding defendant

3    GABAEE's attempt to purchase property in Northern California, telling

4    Business Associate 1 that he wanted "this to be confidential."

5         18.  On or about April 7, 2017, defendant GABAEE spoke with

6    Business Associate 1 during a recorded telephone call about

7    purchasing a property in Northern California.  Business Associate 1

8    told defendant GABAEE, "I have some other good news for you."

9    Business Associate 1 continued, "I think I found another property in

10   Santa Rosa."  Without asking to see the property in person or

11   discussing the list price, defendant GABAEE told Business Associate 1

12   to "make the offer."  Defendant GABAEE told Business Associate 1 that

13   the offer could not be under defendant GABAEE's name and asked

14   whether Business Associate 1 had "any entity" that could "sign for"

15   the offer.  Defendant GABAEE said that if Business Associate 1 used

16   an entity to make the offer, defendant GABAEE would later take

17   ownership of the property via "assignment."

18        19.  On or about April 10, 2017, during a recorded telephone

19   call, defendant GABAEE told CW1 that he "made an offer on something,"

20   referring to the Northern California property.  CW1 asked, "you saw

21   something that looked good?"  Defendant GABAEE responded, "Yeah, I

22   told them today to go ahead and make the offer; I don't want to lose

23   it the second time."

24        20.  On or about April 11, 2017, during a recorded meeting, CW1

25   handed defendant GABAEE a copy of the DPSS Lease.  The parties to the

26   lease were the County and M&A Gabaee.  The DPSS Lease was for a

27   period of 10 years and estimated to be worth at least $45,464,400 for

28   defendant GABAEE and his company.  After CW1 gave defendant GABAEE

the DPSS Lease, defendant GABAEE handed CW1 a real estate listing for a property on Annadel Heights Drive in Santa Rosa (the "Annadel Heights Property"). Defendant GABAEE said, "this is the one [on which] I'm trying to make an offer." The list price for the Annadel Heights Property was originally $1,199,000 but later reduced to $1,095,000.

21.  On or about April 24, 2017, defendant GABAEE placed an offer on the Annadel Heights Property for approximately $1,035,000, as a bribe for CW1.

22.  On or about April 25, 2017, defendant GABAEE placed a second offer on the Annadel Heights Property for approximately $1,065,000, again as a bribe for CW1.

Concealment of Material Facts

23.  Beginning in or about 2010 or 2011, and continuing until at least on or about April 25, 2017, defendant GABAEE concealed from the County that he paid CW1 bribes and kickbacks of approximately $1,000 about every month, in exchange for, among other things: (a) CW1 providing non-public County information to defendant GABAEE; (b) CW1 resolving issues between defendant GABAEE and County departments or agencies on terms favorable to defendant GABAEE; and (c) CW1 helping to secure County leases for defendant GABAEE and negotiating terms in those leases that were beneficial to defendant GABAEE.

24.  Beginning in or about 2010 or 2011, and continuing until December 16, 2016, CW1 concealed from the County that defendant GABAEE paid him bribes and kickbacks of approximately $1,000 about every month, in exchange for, among other things: (a) CW1 providing non-public County information to defendant GABAEE; (b) CW1 resolving issues between defendant GABAEE and County departments or agencies on

1   terms favorable to defendant GABAEE; and (c) CW1 helping to secure

2   County leases for defendant GABAEE and negotiating terms in those

3   leases that were beneficial to defendant GABAEE.

4   B.    USE OF WIRES

5        25.   On or about the dates set forth below, within the Central

6   District of California and elsewhere, defendant GABAEE, for the

7   purpose of executing the above-described scheme to defraud, caused

8   the transmission of the following items by means of wire

9   communication in interstate commerce:

| COUNT | DATE | WIRE DESCRIPTION |
|-------|------|------------------|
| ONE | February 8, 2017 | Email from County Employee 1 to an employee of the Charles Company ("Charles Company Employee 1"), copying CW1 and defendant GABAEE, with an "amendment for the 12000 Hawthorne lease [DPSS Lease]" attached |
| TWO | April 13, 2017 | Email from County Employee 1 to Charles Company Employee 1, copying CW1, with the "draft Hawthorne lease [DPSS Lease] and work letter" attached |
| THREE | April 22, 2017 | iMessage from Business Associate 1 to a real estate agent in Northern California ("Real Estate Agent 1") indicating that the purchase offer for the Annadel Heights Property on behalf of defendant GABAEE would be sent on or after "Monday," April 24, 2017 |

COUNT FOUR

[18 U.S.C. § 666(a)(2)]

The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 4 of the Introductory Allegations and paragraphs 1 through 25 of Counts One through Three as if set forth fully herein.

Beginning on a date unknown and continuing until on or about April 25, 2017, in Los Angeles County ("County"), within the Central District of California, defendant ARMAN GABAEE, also known as "Arman Gabay," corruptly offered and agreed to give a thing of value, that is, a residential property in Northern California valued over $1,000,000, to Cooperating Witness 1 ("CW1") intending to influence and reward CW1 in connection with any business, transactions, and series of transactions of the County involving $5,000 or more, namely, the awarding of the Department of Public Social Services Lease.

COUNT FIVE

[18 U.S.C. § 666(a)(2)]

The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 4 of the Introductory Allegations and paragraphs 1 through 25 of Counts One through Three as if set forth fully herein.

Between on or about December 20, 2016 and on or about April 11, 2017, in Los Angeles County ("County"), within the Central District of California, defendant ARMAN GABAEE, also known as "Arman Gabay," corruptly gave, offered, and agreed to give a thing of value, that is, $6,000 in cash, over a series of payments, to Cooperating Witness 1 ("CW1") intending to influence and reward CW1 in connection with any business, transactions, and series of transactions of the County involving a thing of value of $5,000 or more, including by CW1 (a) providing non-public County information to defendant GABAEE; (b) resolving issues between defendant GABAEE and County departments or agencies on terms favorable to defendant GABAEE; and (c) helping to

///

///

1  secure County leases for defendant GABAEE and negotiating terms in

2  those leases that were beneficial to defendant GABAEE.

3

4                                          A TRUE BILL

5                                          /S/

6                                          Foreperson

7  NICOLA T. HANNA
   United States Attorney
8

9

   LAWRENCE S. MIDDLETON
10 Assistant United States Attorney
   Chief, Criminal Division
11

   MACK E. JENKINS
12 Assistant United States Attorney
   Chief, Public Corruption and Civil Rights Section
13

   RUTH C. PINKEL
14 Assistant United States Attorney
   Senior Litigation Counsel
15 Public Corruption and Civil Rights Section

16 LINDSEY GREER DOTSON
   Assistant United States Attorney
17 Public Corruption and Civil Rights Section

18

19

20

21

22

23

24

25

26

27

28