BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Ivy A. Wang (State Bar No. 224899)
  iwang@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
Arman Gabaee, aka "Arman Gabay"

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-cr-00331-GW |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| vs. | |
| ARMAN GABAEE aka "Arman Gabay," | Date:        July 8, 2019<br>Time:        8:00 a.m.<br>Courtroom:   9D |
| Defendant. | Judge:        Hon. George Wu<br>Status Conf.: August 29, 2019<br>Trial Date:   September 10. 2019 |

**TO THE HONORABLE COURT AND ALL PARTIES:**

   **PLEASE TAKE NOTICE** that, on July 8, 2019, at 8:00 a.m. or as soon

thereafter as this matter may be heard, in Courtroom 9D of the First Street U.S.

Courthouse, located at 350 W. 1st Street, in Los Angeles, California 90012, before

the Honorable George Wu, Defendant Arman Gabaee aka Arman Gabay will and

hereby does move the Court to compel the government to produce the Federal

Bureau of Investigation's full confidential source file for its confidential informant

and the informant's tax returns between 2010 and 2016.

   This motion is made pursuant to Federal Rule of Criminal Procedure 16,

1    *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150

2    (1972).  This motion is based upon this notice of motion, the attached memorandum

3    of points and authorities, the declaration of Ivy A. Wang and the exhibits attached

4    thereto, the declaration of Peter Norell, the papers and records on file with the

5    Court, and such further written and/or oral evidence and argument as may be

6    allowed by the Court.

7

8    Dated:  June 10, 2019                    BROWNE GEORGE ROSS LLP

9                                             Thomas P. O'Brien
                                              Ivy A. Wang
10                                            David J. Carroll

11                                       By:  ___/s/ Thomas P. O'Brien___

12                                            Thomas P. O'Brien
                                         Attorneys for Defendant
13                                       Arman Gabaee aka "Arman Gabay"

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 2

    A.     The Allegations Against Mr. Gabay ............................................... 2

    B.     The Government's Title III Wiretaps ............................................. 2

    C.     The Informant's Plea Agreement .................................................... 3

    D.     Mr. Gabay's Discovery Requests and Meet and Confer Efforts ........... 3

III.   LEGAL STANDARD ............................................................................... 6

IV.    ARGUMENT ........................................................................................... 6

    A.     Mr. Gabay is Entitled to the Entire Confidential Source File ............... 6

        1.     The Government Must Produce the Entire File Under *Giglio* ....................................................................... 6

        2.     The File is Relevant to the Validity of the Title III Wiretaps .......................................................... 7

        3.     The File is Relevant to a Potential Entrapment Defense ............. 9

        4.     Neither Reason that the Government Has Provided Warrants Withholding the File From Mr. Gabay ...................... 10

    B.     Mr. Gabay is Entitled to the Informant's 2010 to 2016 Tax Returns ............................................................. 12

V.     CONCLUSION ...................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## <u>CASES</u>

*Cone v. Bell*,
   556 U.S. 449 (2009) ............................................................... 10, 12

*Giglio v. United States*,
   405 U.S. 150 (1972) ................................................................*passim*

*United States v. Acosta*,
   357 F. Supp. 2d 1228 (D. Nev. 2005) ............................................ 10

*United States v. Bennett*,
   219 F.3d 1117 (9th Cir. 2000) ..................................................... 8

*United States v. Cedano-Arellano*,
   332 F.3d 568 (9th Cir. 2003) ...................................................... 7

*United States v. Chimera*,
   201 F.R.D. 72 (W.D.N.Y. 2001) ................................................. 7

*United States v. Daum*,
   847 F. Supp. 2d 18 (D.D.C. 2012).............................................. 12

*United States v. DeMarco*,
   407 F. Supp. 107 (C.D. Cal. 1975) ............................................ 12

*United States v. Doe*,
   705 F.3d 1134 (9th Cir. 2013) ............................................ 6, 9, 10

*United States v. Hernandez-Meza*,
   720 F.3d 760 (9th Cir. 2013) ................................................ 6, 10

*United States v. Meling*,
   47 F.3d 1546 (9th Cir. 1995) ...................................................... 8

*United States v. Rittweger*,
   524 F.3d 171 (2d Cir. 2008) ..................................................... 12

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007) ..................................................... 12

*United States v. Salemme*,
   978 F. Supp. 343 (D. Mass. 1997)............................................... 7

# **TABLE OF AUTHORITIES**
## (Continued)

**Page**

*United States v. Soto-Zuniga*,
  837 F.3d 992 (9th Cir. 2016) ................................................................ 7

*United States v. Stever*,
  603 F.3d 747 (9th Cir. 2010) ................................................................ 6

*United States v. Taylor*,
  No. 3:13-cr-0079, 2014 WL 12784775 (D. Alaska Oct. 31, 2014) ...................... 7

*United States v. Thomas*,
  726 F.3d 1086 (9th Cir. 2013) .............................................................. 7

*United States v. Thomas Shepos*,
  No. 2:18-cr-00569 (C.D. Cal.), Dkt. #1, 9 ........................................... 3, 6

## **STATUTES**

18 U.S.C. § 3500 .................................................................................... 12

26 U.S.C. § 6103(a) .............................................................................. 12

26 U.S.C. § 6103(h)(4) ......................................................................... 12

## **OTHER AUTHORITIES**

Federal Rule of Criminal Procedure 16 ..................................... 6, 7, 9, 10, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The government's bribery case against Defendant Arman Gabaee aka Arman Gabay rests almost exclusively on information and audio recordings supplied to the government by a single confidential informant.  In exchange for the informant's cooperation, the government limited the informant's criminal charges to tax fraud and making false statements; it did not charge him with bribery or any of the multiple other crimes described in his plea agreement.  Given this, Mr. Gabay requested that the government produce several items of evidence bearing on the informant's credibility—including the Federal Bureau of Investigation's (FBI) confidential source file for the informant and the tax returns underlying the tax fraud allegations.  The government, however, has refused to produce either the entire confidential source file or any of the tax returns.

Mr. Gabay is entitled to both.  The FBI's confidential source file contains information highly relevant to both the informant's credibility and Mr. Gabay's anticipated entrapment defense, such as whether the FBI properly instructed the informant on the Attorney General Guidelines for informants, any admonishments he received for not following protocol, the FBI's internal assessment of his credibility, a recitation of the facts that led to the opening of this case and the identification of him, the number of recordings, indictments, informations, arrests, and convictions involving him, any asset seizures or forfeitures involving him, and so on.  Similarly, because the informant's commission of tax fraud clearly undermines his credibility, Mr. Gabay has a due process right under *Giglio v. United States*, 405 U.S. 150 (1972), to the evidence underlying those allegations—a right that trumps whatever interest the informant has in the confidentiality of his returns. The Court should therefore order the government to produce the informant's entire confidential source file and the tax returns underlying the tax fraud allegations.

## II.   STATEMENT OF FACTS

### A.   The Allegations Against Mr. Gabay

Mr. Gabay was and is a real estate developer in the Los Angeles area. Indictment at 1, Dkt. #14.  The government has charged Mr. Gabay with wire fraud and federal program bribery.  *See generally id.*  The government alleges that Mr. Gabay offered bribes to a Los Angeles County employee (and eventual government informant) who negotiated leases for County office space.  *Id.* at 2–3.  The alleged bribes included monthly payments to the informant in exchange for nonspecific assistance with negotiating leases and maintaining leased buildings, *id.* at 3–4, and an offer to purchase a residential property in Santa Rosa, California, for the informant in exchange for his assistance in securing a lease for County office space at a mall in Hawthorne, California.  *Id.* at 4–10.  Virtually every fact alleged in the indictment appears to come from either information given to the government by the informant or recorded conversations between the informant and Mr. Gabay.

### B.   The Government's Title III Wiretaps

In February 2017, the government applied for and obtained an order authorizing it to tap Mr. Gabay's telephone, which was based largely on information and audio recordings supplied by the informant.  Appl., Case No. 17-cm-00230 (C.D. Cal. Feb. 28, 2017) (hereinafter "First Wiretap Appl.").  FBI Special Agent Brian Adkins submitted an affidavit in support of that application, wherein he recounted the government's investigation to date and recited facts supposedly demonstrating the necessity of tapping Mr. Gabay's telephone.  In a footnote, SA Adkins alluded to the substantial credibility issues with the informant:

> CW1 [the informant] has admitted to lying to FBI Agents in relation to this investigation prior to his cooperation with the FBI.  Throughout CW1's cooperation, FBI Agents believe CW1 may have withheld information regarding CW1's relationship with other real estate developers conducting business with the County.  On one occasion, during a debrief of CW1, FBI Agents noticed the scent of marijuana coming from CW1's vehicle.  The FBI has not paid CW1 any money, nor has the FBI promised to pay any money in exchange for CW1's cooperation.  Despite my belief that CW1 may be withholding

information, I have found the information CW1 has provided me about [Mr. Gabay] that is detailed in this affidavit to be reliable . . . .

First Wiretap Appl., Decl. Adkins ¶ 5 n.3.

In March 2017, the government applied for and obtained a thirty-day extension of the wiretap on Mr. Gabay's phone.  Appl., Case No. 17-cm-002301 (C.D. Cal. Mar. 29, 2017) (hereinafter "Second Wiretap Appl.").  That application expressly referenced and incorporated information from SA Adkins's declaration in the initial wiretap application.  Second Wiretap Appl., Decl. Adkins ¶ 9.  It also included additional information derived from audio recordings obtained during the initial wiretap period.  *Id.* ¶¶ 22–48.

### C. The Informant's Plea Agreement

On September 5, 2018, the government filed a criminal information against the informant, as well as a plea agreement.  *United States v. Thomas Shepos*, No. 2:18-cr-00569 (C.D. Cal.), Dkt. #1, 9.[1]  In the plea agreement, the informant admitted to: receiving bribes from Mr. Gabay; receiving bribes from an electrical contractor; receiving "kickbacks from real estate commissions" on "several occasions"; lying to federal agents; making false statements on his tax returns; and failing to report over $400,000 of income over a six-year period (2010 to 2016).  Plea Agreement 11–18, *Shepos*, No. 2:18-cr-00569, Dkt. #9.  Despite these admissions, the charges against the informant were limited to one count of making false statements and one count of subscribing to one false tax return for one calendar year.  Information, *Shepos*, No. 2:18-cr-00569, Dkt. #1.

### D. Mr. Gabay's Discovery Requests and Meet and Confer Efforts

On August 9, 2018, and again on October 11, 2018, Mr. Gabay requested that the government produce the FBI's confidential source file for its informant.[2]  Wang

---

[1] The government has identified the informant as Thomas Shepos.

[2] The FBI maintains a confidential source file for every confidential informant that it uses.  Norell Decl. ¶ 3.  This file contains all information known to the FBI

1    Decl. ¶¶ 2–3, Ex. A, B.  On October 24, 2018, Mr. Gabay requested that the

2    government produce all documents relating to the "False Statements on Tax

3    Returns" and "Tax Due and Owing on Unreported Income" described in the

4    informant's plea agreement.  *Id.* ¶ 3, Ex. C.  Although the government subsequently

5    produced documents relating to other requests made by Mr. Gabay, it produced

6    neither the informant's confidential source file nor his tax returns.  *Id.* ¶¶ 3–4.

7         On December 10, 2018, Mr. Gabay sent a meet and confer letter to the

8    government, wherein he requested that the government explain its basis for not

9    producing the confidential source file (among other things).  *Id.* ¶ 5, Ex. D.  The

10   government responded that it had no obligation to produce evidence impeaching its

11   informant because it did not intend to call the informant as a witness at trial.  *Id.* ¶ 6,

12   Ex. E.  Nonetheless, the government stated that it would voluntarily produce some

13   evidence related to "the [informant's] involvement in other investigations" by

14   March 2019, although the government was silent on whether its production would

15   include the confidential source file.  *Id.*

16        On March 28, 2019, Mr. Gabay received the government's additional

17   production, which mostly contained documents related to the informant's

18   cooperation against the electrical contractor referenced in his plea agreement; it

19   again did not include either the confidential source file or his tax returns.  *Id.* ¶ 7.

20   Mr. Gabay subsequently sent another meet and confer letter to the government

21   asking it to confirm whether or not it intended to produce either.  *Id.* ¶ 8, Ex. F.  The

22

---

23   regarding that informant.  *Id.*  This includes, but is not limited to: annual Attorney
     General Guideline instructions to the informant, any admonishments he received for
24   not adhering to those guidelines, the informant's statistical accomplishments (i.e.,
     information that led to the opening of the case and identification of him, the number
25   of recordings, indictments, informations, arrests, and convictions involving him, any
     seizures or forfeitures involving him, etc.), documents detailing any benefits
26   provided to the informant by the government, any information bearing on his
     credibility, assessments of his credibility, FD-209a contact reports, FD-794b
27   payment requests, and FD-1040a annual source reports.  *Id.*
28

1  government responded that it intended to produce some additional evidence related

2  to other requests that Mr. Gabay had made, but it again did not state whether or not

3  it would produce either the confidential source file or the tax returns.  *Id.* ¶ 8, Ex. G.

4        On May 13, 2019, the parties engaged in a meet and confer teleconference

5  regarding several outstanding discovery disputes, including the confidential source

6  file and the tax returns.  *Id.* ¶ 9.  Following this teleconference, Mr. Gabay sent the

7  government yet another meet and confer letter reiterating his request for the

8  confidential source file and referencing an earlier meet and confer letter in which he

9  identified the specific types of documents that he expected would be included in the

10  file.  *Id.* ¶ 9, Ex. H.  Mr. Gabay also stated that, because the informant's tax returns

11  obviously constitute impeachment evidence under *Giglio*, the government's

12  obligation to produce it to Mr. Gabay trumps whatever expectation of privacy the

13  informant might have in his tax returns.  *Id.*

14        The government responded that it would produce only "some materials" from

15  the confidential source file.  *Id.* ¶ 10, Ex. I.  The government appeared to decline to

16  produce the remaining material on the basis that "[m]uch of what is in the

17  confidential source file is not material to your client's defense," and that "any

18  arguably material information contained in the source file" is already included in

19  "other documents that have been, or will be shortly, produced to you."  *Id.*  The

20  government further declined to produce the informant's tax returns, arguing that Mr.

21  Gabay had failed to cite any case law requiring the government to produce the

22  returns where the informant's plea agreement outlined the total amount of

23  unreported income.  *Id.*  Given this impasse, Mr. Gabay now moves to compel their

24  production.[3]

25

---

26     [3] Despite the myriad meet and confers outlined above, the government surprisingly insists that the parties are not at an impasse and asks that they continue

27  meeting and conferring on the issue.  Wang Decl. ¶ 11.  Mr. Gabay disagrees; if six meet and confer letters and a meet and confer teleconference have not resolved the

28  issue, it seems unlikely that further meet and confers will produce a different result.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 16 requires, among other things, that the government produce any evidence in its possession where (1) the evidence is "material to preparing the defense," (2) "the government intends to use the [evidence] in its case-in-chief at trial," or (3) "the [evidence] was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (Rule 16 "grants criminal defendants a broad right to discovery").  "To receive discovery under this Rule, the defendant 'must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense.'"  *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013) (some internal quotation marks omitted).  However, the materiality standard is "a low threshold," *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); information is "material" to the defense "even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path,'" *id.* (quoting *Doe*, 705 F.3d at 1501).

## IV.   <u>ARGUMENT</u>

### A.   **Mr. Gabay is Entitled to the Entire Confidential Source File**

#### 1.   **The Government Must Produce the Entire File Under *Giglio***

The FBI's confidential source file almost certainly contains information calling into question the informant's credibility and reliability, and thus the government must disclose it under *Giglio*, 405 U.S. 150.  In both publicly-available documents and discovery that the government has produced to date, it is clear that the informant has substantial credibility issues: he has lied to federal agents; he has accepted bribes from an electrical contractor; he has lied on his tax returns; he has committed bankruptcy fraud; he apparently smoked marijuana immediately prior to an FBI debrief; and so on.  *See, e.g.*, First Wiretap Appl., Decl. Adkins ¶ 5 n.3; Plea Agreement 11–18, *Shepos*, No. 2:18-cr-00569, Dkt. #9.  There are also substantial

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1  reliability issues with the informant, such as instances where the informant
2  contacted a target without first informing FBI agents.  The confidential source file is
3  precisely the centralized location where all of this information should be stored.
4  Moreover, to the extent there is additional information undermining the credibility
5  or reliability of the informant that has not yet been publicly-disclosed, the
6  confidential source file is where such information would exist.  And to the extent
7  any of the foregoing information was omitted from the confidential source file, that
8  in and of itself would be significant to Mr. Gabay's entrapment defense at trial, as it
9  would suggest that the government might have intentionally overlooked evidence
10  undermining the credibility of its informant for the purpose of securing a conviction
11  against Mr. Gabay.  The government thus must produce the entire file to Mr. Gabay
12  under *Giglio*.

13              **2.      The File is Relevant to the Validity of the Title III Wiretaps**

14              In addition, any evidence calling into question the validity of the
15  government's Title III wiretap—such as undisclosed credibility issues with its
16  informant—is also discoverable.  The Ninth Circuit has consistently held that Rule
17  16 requires the government to produce documents that could be relevant to a
18  defendant's pretrial suppression motion.  *United States v. Soto-Zuniga*, 837 F.3d
19  992, 1002 (9th Cir. 2016) (holding that the government was required to produce
20  documents relevant to the constitutionality of a vehicular checkpoint, which in turn
21  could have led to the suppression of evidence found in the defendant's car); *United*
22  *States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003); *United States v.*
23  *Thomas*, 726 F.3d 1086, 1097 (9th Cir. 2013).  Moreover, various district courts
24  have specifically held that Rule 16 requires the government to produce documents
25  that bear on the validity of a Title III wiretap application or order.  *United States v.*
26  *Chimera*, 201 F.R.D. 72, 75–76 (W.D.N.Y. 2001); *United States v. Salemme*, 978 F.
27  Supp. 343, 361 (D. Mass. 1997); *United States v. Taylor*, No. 3:13-cr-0079, 2014
28  WL 12784775, at *5–6 (D. Alaska Oct. 31, 2014).  Where the government relies on

1    information provided by a confidential informant, the omission of material

2    information impeaching the credibility of the informant may justify suppression of

3    the intercepted communications.  *See United States v. Bennett*, 219 F.3d 1117, 1124

4    (9th Cir. 2000); *United States v. Meling*, 47 F.3d 1546, 1556 (9th Cir. 1995).

5         Here, the government appeared to rely almost exclusively on its confidential

6    informant to justify its wiretap.  For example, SA Adkins stated that his knowledge

7    of the background relationship between the informant and Mr. Gabay was "based on

8    conversations" that SA Adkins had with the informant.  First Wiretap Appl., Decl.

9    Adkins ¶¶ 16a–16g.  The facts in that background relationship include accusations

10   that Mr. Gabay sought "improper assistance" from the informant as early as 2005,

11   *id.* ¶ 16d, suggestions that Mr. Gabay had made cash bribe payments to the

12   informant since 2010 or 2011, *id.* ¶¶ 16e–16g, and descriptions of various favors

13   that the informant supposedly provided to Mr. Gabay in return for those payments,

14   *id.* ¶ 16g & n.5.  SA Adkins's knowledge of the County leasing process also

15   appeared to derive from information provided by the informant.  *Id.* ¶¶ 11–12.

16        SA Adkins also offered definitive interpretations of critical statements made

17   by the informant during his recorded conversations, which in turn were based on

18   information that the informant provided to SA Adkins.  For example, the informant

19   allegedly told Mr. Gabay in one recording that, in order to move the leasing process

20   along, Mr. Gabay needed to use any additional "juice" that he had "from the other

21   end."  *Id.* ¶ 20.  SA Adkins purported to explain—based on his "training,

22   experience, *and discussions with CW1*," *id.* ¶ 20 n.9 (emphasis added)—that this

23   otherwise-ambiguous statement actually refers to Mr. Gabay's "ability to convince

24   elected public officials" to support that particular lease, *id.*  In another example, Mr.

25   Gabay allegedly told the informant that "The Man is on board," which the informant

26   told SA Adkins was a reference to a particular elected public official.  *Id.* ¶ 24 &

27   n.11.  And when Mr. Gabay discussed with the informant a charitable donation he

28   allegedly made to that elected official's homelessness initiative, SA Adkins

1 described it as an attempt to "gain Elected Official 1's favor in matters that

2 concerned [Mr. Gabay's] real estate business," *id.* ¶ 39 & n.17—again, based simply

3 on the informant's say so.  SA Adkins's declaration is littered with other such

4 interpretations and statements of fact that appear to derive solely from what the

5 informant told him, which SA Adkins then spliced into his recitation of the recorded

6 conversations.  *See, e.g., id.* ¶¶ 42, 44, 46, 49 n.19, 51 n.21.

7 All of this information is crucial to the sufficiency of the government's

8 wiretap application.  By providing the background and context that he did to the

9 statements and conduct of Mr. Gabay and the informant, SA Adkins created the

10 perception that their otherwise-ambiguous behavior was likely unlawful.  And as all

11 of this background and context derived exclusively from the informant's largely-

12 unverified say so, credibility issues with the informant could spell the difference

13 between a sufficient application and an insufficient one.  It is therefore crucial that

14 Mr. Gabay be given the opportunity to adequately investigate and, if necessary,

15 challenge the informant's credibility—and whether SA Adkins gave the district

16 court an accurate picture of the informant's credibility (or lack thereof) in the

17 application.

18           **3.       The File is Relevant to a Potential Entrapment Defense**

19 Finally, information in the confidential source file will be relevant to Mr.

20 Gabay's entrapment defense.  The Ninth Circuit has held that Rule 16 requires the

21 government to produce all evidence that is relevant to an entrapment defense.  *Doe*,

22 705 F.3d at 1151.  This includes evidence that is both favorable *and* unfavorable to

23 such a defense.  *Id.* (holding that evidence that causes a defendant to "completely

24 abandon the entrapment defense and take an entirely different path" is still subject to

25 discovery).  Here, the presence or absence of information in the file undermining the

26 informant's credibility will allow Mr. Gabay to determine whether or not his

27 entrapment defense could be successful at trial—such as by showing that the

28 government used an informant that it knew to be unreliable and incredible.  And

1    even if the file does not contain any significant additional information that could be

2    used in support of an entrapment defense, that fact alone would bear on Mr. Gabay's

3    decision as to whether or not to pursue an entrapment defense at all—which is in

4    and of itself sufficient reason to warrant its production. *E.g.*, *Hernandez-Meza*, 720

5    F.3d at 768 (information is "material" to the defense "even if it simply causes a

6    defendant to 'completely abandon' a planned defense and 'take an entirely different

7    path'" (quoting *Doe*, 705 F.3d at 1501)).

8    ### 4.    Neither Reason that the Government Has Provided Warrants Withholding the File From Mr. Gabay

9          The government offers two reasons why it need not produce the entire

10   confidential source file, neither of which are persuasive.  First, the government

11   contends that at least some of the information in the file is not material to Mr.

12   Gabay's defense.  However, as explained above, there is an overwhelming amount

13   of impeachment information that unquestionably *is* material to Mr. Gabay's defense

14   and that almost certainly will be noted in the file.  While there could also be some

15   immaterial information comingled with the material information, it is hardly fair that

16   the government—which has a vested interest in maintaining the credibility of its key

17   informant at trial, regardless of which party calls him to testify—gets to decide what

18   information and documents sufficiently impeach its witness to trigger its disclosure

19   obligations.  And because materiality under either *Brady* or Rule 16 is such a low

20   threshold, this is not a persuasive basis on which to withhold the confidential source

21   file.  *See, e.g.*, *Hernandez-Meza*, 720 F.3d at 768 (materiality under Rule 16 is a

22   "low threshold") *United States v. Acosta*, 357 F. Supp. 2d 1228, 1232 (D. Nev.

23   2005) ("*Brady's* materiality standard for due process violations in a post-trial

24   context should not be used to sanction any and all conduct that does not rise to a

25   constitutional violation of defendant's due process rights because the United States

26   Attorney is held to a higher standard."); *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009)

27   ("Although the Due Process Clause of the Fourteenth Amendment, as interpreted

28

1    by *Brady*, only mandates the disclosure of material evidence, the obligation to

2    disclose evidence favorable to the defense may arise more broadly under a

3    prosecutor's ethical or statutory obligations.  As we have often observed, the

4    prudent prosecutor will err on the side of transparency, resolving doubtful questions

5    in favor of disclosure." (citations omitted)).

6           Second, the government contends that it need not produce the entire file

7    because it generically asserts that any materially-impeaching evidence in the file

8    also exists elsewhere in discovery that the government has produced.  But this

9    argument fares no better.  As an initial matter, the government has identified no

10   authority that permits it to withhold cumulative impeachment evidence.  Moreover,

11   Mr. Gabay cannot simply take at face-value the government's blanket and non-

12   specific assertion that *every* item of materially-impeaching evidence also exists

13   elsewhere in the investigatory file.

14          Finally, whether or not all impeachment evidence otherwise produced in

15   discovery was *also* noted in the confidential source file is of independent

16   significance and is among the issues that Mr. Gabay may wish to test at trial.  For

17   example, if (contrary to the government's current assertion) information

18   undermining the informant's credibility was recklessly or intentionally omitted from

19   the confidential source file, that would support Mr. Gabay's entrapment defense.

20   And even if every impeachable fact from the investigatory file also exists in the

21   confidential source file, that fact would call into question whether or not federal

22   agents, armed with such damning knowledge of his incredibility and unreliability,

23   were justified in placing such great weight on the informant during the investigation.

24   In short, there is no scenario where the government's confidential source file is not

25   material to Mr. Gabay's defense.

26          For these reasons, the Court should order the government to disclose the

27   entire confidential source file to Mr. Gabay.

28

**B.    Mr. Gabay is Entitled to the Informant's 2010 to 2016 Tax Returns**

The government does not appear to dispute that the tax returns underlying the government's allegations of tax fraud constitute impeachment evidence under *Giglio*, 405 U.S. 150.  Nor could it, for those returns are the sine qua non of the tax fraud allegations and charges in the informant's plea agreement and criminal information, respectively.  The only question is whether the general statutory prohibition on the disclosure of tax returns, 26 U.S.C. § 6103(a), trumps *Giglio*.

The clear answer is no.  The government's *Giglio* and *Brady* obligations are of a constitutional magnitude.  *E.g.*, *Cone*, 556 U.S. at 470 n.15.  Constitutional requirements, in turn, trump any contrary statutory directives.  *Cf. United States v. DeMarco*, 407 F. Supp. 107, 111 (C.D. Cal. 1975) ("The fact that government memoranda are not discoverable under Rule 16(b) of the Federal Rules of Criminal Procedure cannot qualify the government's responsibilities under Brady.  The very purpose of Brady was to make clear that the due process clause compels the production of material not otherwise discoverable."); *United States v. Daum*, 847 F. Supp. 2d 18, 20 (D.D.C. 2012) ("*Brady/Giglio* obligations always trump both the Jencks Act and any limiting language in Rule 16."); *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (reversing for *Brady* and *Giglio* violations despite compliance with Jencks Act requirements); *United States v. Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500").  Thus, to the extent *Giglio* requires disclosure—which, as the government has more or less conceded, it does—any restrictions on disclosure under the Internal Revenue Code does not alter the analysis.

Indeed, § 6103 contains myriad statutory exceptions to the general prohibition on disclosure—including specifically in "[f]ederal . . . judicial . . . proceeding[s] pertaining to tax administration . . . to the extent required by order of a court

1 | pursuant to . . . [R]ule 16 of the Federal Rules of Criminal Procedure," 26 U.S.C.
2 | § 6103(h)(4).  That Congress recognized and expressly provided for the disclosure
3 | of tax returns in a federal criminal proceeding substantially undermines the
4 | government's argument that the informant's interest in the confidentiality of his
5 | returns is so paramount as to trump any contrary *Brady* and *Giglio* disclosure
6 | obligations.

7 |      And despite the government's argument otherwise, the fact that the plea
8 | agreement discloses the informant's underreported income is not sufficient to
9 | overcome the government's disclosure obligations.  Even aside from the question
10 | whether the disclosure of underreported income in the plea agreement eviscerates
11 | the obligation to disclose the evidence underlying that crime, the returns could very
12 | well contain *other* perjured statements or impeachment evidence that are *not*
13 | identified in the plea agreement.  For example, the government may have
14 | miscalculated how much income was underreported; the sources of the income that
15 | was not reported may have independent impeachment value; other misstatements
16 | may exist on the returns that was not otherwise identified in the plea agreement; and
17 | so on.  Mr. Gabay is entitled to know the full extent of any credibility problems with
18 | the government's star informant before proceeding to trial, which includes
19 | reviewing the key evidence underlying crimes to which the informant has admitted.

20 |      For these reasons, the Court should also compel the government to disclose
21 | the informant's tax returns between 2010 and 2016.

26 | / / /
27 | / / /
28 | / / /

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should order the government to disclose to Mr. Gabay the FBI's full and complete confidential source file for the informant and the informant's federal tax returns between 2010 and 2016.


Dated:  June 10, 2019                     BROWNE GEORGE ROSS LLP

                                          Thomas P. O'Brien
                                          Ivy A. Wang
                                          David J. Carroll

                                   By:    _____/s/ Thomas P. O'Brien_____
                                                Thomas P. O'Brien
                                          Attorneys for Defendant
                                          Arman Gabaee aka "Arman Gabay"