1   BROWNE GEORGE ROSS LLP
2   Thomas P. O'Brien (State Bar No. 166369)
    tobrien@bgrfirm.com
3   Ivy A. Wang (State Bar No. 224899)
    iwang@bgrfirm.com
4   David J. Carroll (State Bar No. 291665)
    dcarroll@bgrfirm.com
5   2121 Avenue of the Stars, Suite 2800
6   Los Angeles, California 90067
7   Telephone: (310) 274-7100
   Facsimile: (310) 275-5697
8

9   Attorneys for Defendant
   Arman Gabaee aka "Arman Gabay"
10

11              UNITED STATES DISTRICT COURT
12             CENTRAL DISTRICT OF CALIFORNIA
13

14   UNITED STATES OF AMERICA,     Case No. 2:18-cr-00331-GW
15
           Plaintiff,          **DEFENDANT'S REPLY IN**
16                        **SUPPORT OF MOTION TO**
17       vs.                 **COMPEL PRODUCTION OF**
                       **DOCUMENTS**
18   ARMAN GABAEE aka "Arman
19   Gabay,"              Judge:   Hon. George H. Wu
20                        Date:    July 8, 2019
           Defendant.     Time:    8:00 a.m.
21                        Crtrm.:   9D
22                        Trial Date:        September 10, 2019
23                        Status Conference: August 29, 2019
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Arman Gabaee aka Arman Gabay has a Fifth Amendment due process right to all material impeachment evidence in the government's possession, *Giglio v. United States*, 405 U.S. 150 (1972), which includes both the confidential source file and the informant's 2010 to 2016 tax returns. In its opposition, the government does not dispute that both contain impeachment evidence under *Giglio*; instead, it advances a series of nebulous, untestable, and legally flawed justifications for why it can nonetheless continue to withhold them. For instance, the government vaguely asserts that it has withheld only "administrative" documents from the confidential source file, yet it refuses to identify what specific documents that might encompass or how that arbitrary label overrides Mr. Gabay's constitutional right to the file. The government next makes the blanket and wholly conclusory assertion that nothing left in the file is material to Mr. Gabay's defense, but nowhere does it explain how it knows what Mr. Gabay's specific defense theories will be or why Mr. Gabay must simply accept the government's self-serving assessment of what is or is not material to those defenses. And while the government claims to have already produced all "material" information from the file in other forms, there are substantial reasons to doubt this untestable contention—assuming it is even a legitimate basis for withholding evidence at all. On top of all of this, the government identifies no specific harm whatsoever in disclosing the entire file. If the remainder of the file is really so innocuous or duplicative of what has already been produced, it is unclear why the government has been fighting tooth and nail for months to ensure that Mr. Gabay does not see it.

The government's justification for withholding the informant's tax returns is equally unavailing. The government first makes the puzzling assertion that Mr. Gabay has failed to "provide any case law or authority whatsoever to support his request" for the informant's tax returns, apparently believing that *Giglio* is neither

1  "case law" nor "authority."  Beyond that, however, the government disputes neither
2  that the returns contain impeachment evidence under *Gilgio* nor that *Giglio*, as a
3  constitutional imperative, takes precedence over any congressional restrictions on
4  their disclosure.  Instead, the government falls back on a similar rationale for
5  withholding them as it does the confidential source file: Mr. Gabay should just
6  accept the government's sanitized summary of the evidence that impeaches its star
7  informant.  Unsurprisingly, none of the authority that the government cites comes
8  close to supporting that position.
9      In sum, this is far from the much-maligned "fishing expedition" that the
10  government makes it out to be; rather, Mr. Gabay is simply seeking two discrete sets
11  of documents that undisputedly contain both impeachment evidence and evidence
12  relevant to his entrapment defense.  The Court should order the government to
13  produce that evidence.

14  **II.  <u>ARGUMENT</u>**

15      **A.    Mr. Gabay Is Entitled to the Full Confidential Source File**

16      **1.    The Government's Conclusory Assertion that Nothing Left
17           in the File Is Material to Mr. Gabay's Defense Is Insufficient**

18      The government's refusal to produce the remainder of the confidential source
19  file centers on its unsupported, untestable, and suspect assertion that nothing left in
20  the file contains information material to Mr. Gabay's defense.  First, the government
21  conspicuously refuses to identify what documents or information remain in the file
22  besides assigning them the meaningless label of "administrative documents."  Opp'n
23  14, ECF No. 59.  Just because the government characterizes the documents as
24  "administrative" does not mean that they do not contain impeachment or other
25  relevant evidence—and the government's concession that at least one of those
26  "administrative" documents (an FD-209a contact report) contains impeachment
27  evidence not otherwise disclosed in discovery proves that to be the case.  Opp'n 16.
28  Similarly, the government's recent production of several OIA admonishments to the

1   informant—which the government presumably would also label "administrative"—

2   shows that it is drawing distinctions among administrative documents that should

3   and should not be produced.  Wang Suppl. Decl. ¶¶ 3–4, Exs. J–K.  In short, nothing

4   at all turns on whether the documents are "administrative" or not.

5        Moreover, the government offers an incredibly strained interpretation of its

6   discovery obligations.  The government contends that, because Mr. Gabay has no

7   clairvoyant ability to identify exactly what information the government has not

8   produced from the confidential source file, he has not shown that such information

9   is material to his defense.  *E.g.*, Opp'n 17.  But where Mr. Gabay *has* managed to

10  discern from alternative sources specific material information that is (or should be)

11  in the file, the government takes the position that it need not produce the file

12  because those alternative sources are all that Mr. Gabay should get.  *See* Opp'n 16.

13  In other words, either Mr. Gabay does not know what is in the file and on that basis

14  is not entitled to it, or he does know what is in the file and on that basis is *also* not

15  entitled to it.  The government cannot have it both ways.

16       The government also fails to address the fundamental contradiction in its

17  (conclusory) assertion that it has produced all evidence from the file material to Mr.

18  Gabay's defense when it does not even know what his specific defense will be.

19  Beyond the government's general suspicion that Mr. Gabay will seek to impeach the

20  government's witnesses and its knowledge that Mr. Gabay will rely to some degree

21  on an entrapment defense, the government has no idea which particular witnesses

22  Mr. Gabay will seek to impeach, the extent of that impeachment, the precise theory

23  of entrapment that he may assert, the manner in which he may show that he did not

24  offer the bribe in question, or any other potential defenses that may arise.  Nor is

25  Mr. Gabay required to disclose any of this just so that he can obtain discovery.

26  *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("A defendant

27  needn't spell out his theory of the case in order to obtain discovery.  Nor is the

28  government entitled to know in advance specifically what the defense is going to

1    be."). Thus, unlike post-trial proceedings where materiality is easily measured
2    against the defense that was actually presented, and is the context in which almost
3    all appellate decisions on criminal discovery arises, the government simply does not
4    know (and is not entitled to know) *in advance* of trial what evidence will be material
5    to the specific defense theories that Mr. Gabay will assert. As a result, its blanket
6    claims that it has already discerned and disclosed all "material" evidence from the
7    file are inherently suspect.

8         In addition, the government's vague past positions on the file's
9    discoverability, and the drip-drip production of documents from the file made only
10   in response to repeated requests by Mr. Gabay, even further call into doubt the
11   government's conclusory and unverifiable assurance that it has produced all material
12   evidence from the file. As Mr. Gabay detailed in his moving papers, he spent
13   *months* requesting the confidential source file, only for the government to repeatedly
14   dodge the request, to insist that Mr. Gabay first identify every document in the file
15   before it would consider producing it, to cryptically state that it will produce "some"
16   (but maybe not all) evidence therefrom, and lastly to demand that Mr. Gabay
17   endlessly debate the issue through meet and confers. Mot. 3–5, ECF No. 54; Wang
18   Decl. ¶¶ 2–11, ECF No. 54-1.

19        Even after Mr. Gabay filed this motion, the discovery games continued. That
20   is, on May 24, 2019, the government pushed back against Mr. Gabay's demand for
21   the source file on the basis that "[m]uch of what is in the confidential source file is
22   not material to your client's defense," and that "any arguably material information
23   contained in the source file" had been (or would shortly be) produced. Wang Decl.
24   ¶ 10, Ex. I. Mr. Gabay thus logically concluded that the government's subsequent
25   June 3, 2019 production contained everything from the file that it believed was
26   discoverable. Wang Suppl. Decl. ¶ 2. Yet after Mr. Gabay filed this motion, and a
27   mere *fifty-nine minutes* before the government filed its opposition, the government
28   sent a letter to Mr. Gabay stating that it would produce several additional documents

from the file, including three OIA admonishments to the informant, an FD-209a contact report memorializing an admonishment to the informant for disobeying FBI protocol for the *third* time, and others.  Wang Suppl. Decl. ¶¶ 3–4, Ex. J–K. Amazingly, the government actually touted in its opposition its production of this FD-209a—a mere hour beforehand and only after a motion to compel was filed—as showing how forthcoming it has been in affirmatively discerning and disclosing impeachment evidence to Mr. Gabay from the file.  Opp'n 16.  Then, when Mr. Gabay received the actual documents themselves several days later, he discovered that the FD-209a contact report was largely redacted.  *Id.* ¶ 4, Ex. K.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1    ████████████████████████████████████████████████████████

2         Given these events, the government's portrayal of itself as affirmatively

3    reviewing its files and disclosing even arguably relevant or impeachment material to

4    Mr. Gabay is doubtful; in reality, the government's practice in this case has been to

5    withhold documents unless and until Mr. Gabay learns of their existence through

6    independent sources and presses the government repeatedly for their production—

7    and sometimes even then it will not do so.  As a result, it is difficult to take at face

8    value the government's generalized and untestable assurance that nothing left in the

9    file is material to Mr. Gabay's defense.

10        Finally, the government's generic proclamation that disclosing the remainder

11   of the file "may reveal confidential law enforcement methods" is a complete red-

12   herring.  Opp'n 15.  Both the informant's identity and the manner in which the

13   government used its informant are known to Mr. Gabay; indeed, the government had

14   to "fully and completely" describe its investigative methods in this case in order to

15   obtain its Title III wiretaps of Mr. Gabay's telephone.  *See* 18 U.S.C. § 2518(1).

16   There are thus no legitimate secrets left in the file that need to be protected—and

17   certainly none that a protective order would not more than adequately safeguard

18   anyway.  As a result, this is also not a basis on which the government can evade its

19   constitutional disclosure obligations to Mr. Gabay.

20                  **2.      Mr. Gabay Has Thoroughly Explained the File's Relevance**

21        Contrary to the government's argument, Mr. Gabay has identified multiple

22   reasons why the source file is material.  The source file is the Federal Bureau of

23   Investigation's centralized location for all information bearing on a confidential

24   informant's credibility, reliability, and usefulness, such as his criminal history, his

25   willingness to follow protocol, any admonishments he has received for not

26   following protocol (from both this case and others), and so on.  Moreover, there is a

27   plethora of relevant misconduct by the informant in each of those categories, such as

28   his lies to the FBI, his commission of tax fraud, his commission of bankruptcy

1    fraud, his repeated breaches of informant protocol, his smoking marijuana before an

2    FBI debrief,[2] and much more.  Thus, the government's suggestion that Mr. Gabay is

3    simply on a "fishing expedition" for "nugget[s] of impeachment information,"

4    Opp'n 17, is absurd; there is an avalanche of known credibility problems with this

5    informant, and Mr. Gabay is simply seeking a complete accounting of those

6    problems.  Mr. Gabay is not required to describe each and every way he intends to

7    use each and every item of information in the file to be entitled to its production.

8    *Hernandez-Meza*, 720 F.3d at 768.

9    ████████████████████████████████████████

10   ███████████████████████████████████

11   ███████████████████████████████████████████

12   █████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ███████████████████████████████████████

16   ██████████████████████████████████████████

17   ████████████████████████████████████████████

18   ███████████████████████████████████████████

19   ██████████████████████████████████████████████

20   █████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ██████████████████████████████████████████████

23   _____

24       [2] To date, the government has not produced any admonishments to the
informant (or any other information) concerning this incident; all Mr. Gabay has is a

25   passing reference to this fact in a footnote in the government's Title III wiretap
application and the criminal complaint.  Wang Suppl. Decl. ¶ 8.  It is unclear

26   whether no such documents have been produced because they do not exist, because
the government deems informant drug use immaterial, or because it believes that its

27   passing reference to the issue in the wiretap application and the criminal complaint

28   is all that Mr. Gabay is entitled to on that topic.



7                                       There is nothing

8 "perplexing," Opp'n 17, at all about this as a basis for discovery—and the fact that

9 the government characterizes it as such only casts further doubt on its claims to have

10 independently discerned and disclosed *all* evidence material to Mr. Gabay's defense.

11       In short, this is far from the "fishing expedition" that the government makes it

12 out to be.  Opp'n 17.  Mr. Gabay has identified a discrete set of documents that he

13 seeks—those in the confidential source file—and has articulated more than

14 sufficient reason why they contain material evidence (impeachment or otherwise).

15 This entitles Mr. Gabay to its production.

16               **3.**        **The Confidential Source File Is Otherwise Discoverable**

17       The government's belief that Mr. Gabay is seeking discovery for an improper

18 purpose—*i.e.*, to use it "as a 'sword' to challenge the government's conduct," Opp'n

19 18—wholly ignores the authorities that Mr. Gabay cited in his moving papers.  The

20 Ninth Circuit has unequivocally held that a criminal defendant is entitled to broad

21 discovery on an entrapment defense—even if just to confirm that such a defense

22 would not be viable.  *Doe*, 705 F.3d at 1151 ("At the time of the request, Doe *was*

23 preparing an entrapment defense.  The question is whether the information would

24 have helped Doe in this endeavor, not whether the information would ultimately

25 prove an entrapment defense.  Even if the documents caused Doe to completely

26 abandon the entrapment defense and take an entirely different path, the documents

27 would still have been 'material to preparing the defense' under Rule

28 16(a)(1)(E)(i).").  The Ninth Circuit has also squarely held that the government must

produce evidence that could lead to the suppression of other adverse evidence. *E.g.*, *United States v. Soto-Zuniga*, 837 F.3d 992, 1002 (9th Cir. 2016). This includes producing evidence that could cause the suppression of a wiretap—such as evidence impeaching an informant who provided information used to secure the wiretap. *E.g.*, *United States v. Chimera*, 201 F.R.D. 72, 75–76 (W.D.N.Y. 2001); *United States v. Salemme*, 978 F. Supp. 343, 361 (D. Mass. 1997); *United States v. Taylor*, No. 3:13-cr-0079, 2014 WL 12784775, at \*5–6 (D. Alaska Oct. 31, 2014); *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United States v. Meling*, 47 F.3d 1546, 1556 (9th Cir. 1995). And, of course, the Due Process Clause of the Fifth Amendment requires the production of any material impeachment evidence in the government's possession. *Giglio*, 405 U.S. 150. As Mr. Gabay explained in his moving papers, he is entitled to the confidential source file on all of these bases. Therefore, the government should be required to produce the confidential source file in its entirety to Mr. Gabay.

The government's reliance on Rule 16(a)(2) fairs no better. That rule, which essentially codifies the work product doctrine in criminal cases, does not bar the production of documents such as notes, reports, and statements of a testifying agent under the Jencks Act—which the confidential source file would constitute. *See United States v. Harris*, 543 F.2d 1247, 1250 (9th Cir. 1976); *see also Doe*, 705 F.3d at 1150 (holding that the district court erred in refusing to order the production of the FBI's "records or reports" containing information provided to it by a government witness in order to support an entrapment defense). Moreover, it should go without saying that Rule 16(a)(2) in any event cannot qualify the government's constitutional obligation to produce impeachment evidence under *Giglio*. *E.g.*, *United States v. Daum*, 847 F. Supp. 2d 18, 20 (D.D.C. 2012) ("*Brady/Giglio* obligations always trump both the Jencks Act and any limiting language in Rule 16."); *United States v. DeMarco*, 407 F. Supp. 107, 111 (C.D. Cal. 1975) (same). Indeed, even the case that the government cites concerning Rule 16(a)(2) makes this

1  precise distinction.  *United States v. Fort*, 472 F.3d 1106, 1110 (9th Cir. 2007) ("[I]t

2  is important to note that this appeal does not involve the government's disclosure

3  obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), or other disclosure rules.

4  *. . . [N]othing in this opinion should be interpreted to diminish or dilute the*

5  *government's* Brady *obligations*." (emphasis added)).

6  **B.     Mr. Gabay is Entitled to the Informant's Tax Returns**

7  In his moving papers, Mr. Gabay pointed out that the informant's tax returns

8  between 2010 and 2016—which contain perjured statements about his total income

9  and sources of income—constitute material impeachment evidence under *Giglio* and

10  thus must be disclosed.  Mot. 12–13.  In its opposition, the government does not

11  dispute that the returns materially impeach its informant; rather, it makes the

12  confusing assertion that Mr. Gabay did not "provide any case law or authority

13  whatsoever" requiring the production of the tax returns.  Opp'n 19.  It is unclear

14  what the government believes *Giglio* constitutes if not "case law or authority."

15  Moreover, the government apparently no longer disputes that Mr. Gabay's

16  due process right to the returns under *Giglio* trumps any congressional restrictions

17  on their disclosure; the government now concedes that it must disclose an

18  individual's tax returns simply where the "defendant satisfies his burden of

19  demonstrating materiality and a court orders the production," Opp'n 19, which is

20  essentially the standard for *all* criminal discovery and not just tax returns.

21  The crux of the dispute, then, centers on whether Mr. Gabay is entitled to an

22  informant's tax returns where the government has produced a plea agreement

23  describing some (but perhaps not all) of the perjured statements about his total

24  income and sources of income.  He is.  The tax returns still constitute impeachment

25  evidence under *Giglio*—and thus must be produced—regardless whether a plea

26  agreement *also* exists describing parts of the returns' contents.  Indeed, the

27  government's novel theory that it can withhold impeachment evidence as long as it

28  provides defense counsel with a sanitized summary of that evidence would be an

1  unbounded curtailment of criminal discovery; the government could effectively

2  substitute whatever evidence it does not want to produce with a watered-down

3  synopsis of its contents.  The whole point of criminal proceedings is for the defense

4  to be able to test the government's view of the evidence; Mr. Gabay is not required

5  to just accept the government's characterization of that evidence.  Unsurprisingly,

6  the government identifies no authority whatsoever for its position that the disclosure

7  of the informant's plea agreement eviscerates the government's constitutional

8  obligation to disclose the material impeachment evidence underlying that

9  agreement.  Again, it is precisely this approach to discovery adopted by the

10  government in this case that substantially undermines Mr. Gabay's confidence in its

11  promises that it has affirmatively looked for, and disclosed, all "material" evidence

12  to him.

13  **III.    CONCLUSION**

14         For these reasons, the Court should order the government to produce to Mr.

15  Gabay the full and complete confidential source file for its informant and the

16  informant's 2010 to 2016 federal tax returns.

17

18  Dated:  June 24, 2019              BROWNE GEORGE ROSS LLP

19                                        Thomas P. O'Brien
                                         Ivy A. Wang
20                                        David J. Carroll

21                                    By:       /s/ Thomas P. O'Brien

22                                            Thomas P. O'Brien

23                                    Attorneys for Defendant
                                      Arman Gabaee aka "Arman Gabay"

24

25

26

27

28