# Exhibit F



# County of Los Angeles
## CHIEF EXECUTIVE OFFICE
713 KENNETH HAHN HALL OF ADMINISTRATION
LOS ANGELES, CALIFORNIA 90012
(213) 974-1101
http://ceo.lacounty.gov

**WILLIAM T FUJIOKA**
Chief Executive Officer

Board of Supervisors
GLORIA MOLINA
First District

YVONNE B. BURKE
Second District

ZEV YAROSLAVSKY
Third District

DON KNABE
Fourth District

MICHAEL D. ANTONOVICH
Fifth District

December 18, 2007

The Honorable Board of Supervisors
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012

Dear Supervisors:

### AMENDMENT NO. 3 TO LEASE NO. 66261
### CHILD SUPPORT SERVICES DEPARTMENT
### 15531 VENTURA BOULEVARD, ENCINO
### (THIRD DISTRICT) (3 VOTES)

**IT IS RECOMMENDED THAT YOUR BOARD:**

1. Approve Amendment No. 3 to renew the lease for a five-year term with M&A Gabaee, L.P. (Landlord) for 43,775 rentable square feet of building space, located at 15531 Ventura Boulevard, Encino, for the Child Support Services Department (CSSD) at an annual first year rent not to exceed $1,342,045. The costs associated with the proposed lease will be fully funded, 34 percent from State funds and 66 percent from Federal funds.

2. Find that this Amendment No. 3 is exempt from the provisions of the California Environmental Quality Act (CEQA) pursuant to Class 1, of the Environmental Document Reporting Procedures and Guidelines adopted by your Board on November 17, 1987, and Section 15061 (b) (3) of the State CEQA Guidelines.

**PURPOSE/JUSTIFICATION OF RECOMMENDED ACTION**

Approval of this proposed renewal will extend the term of the lease for five years and allow CSSD to continue to house its Division I, 156 member staff at 15531 Ventura Boulevard, Encino, which performs case management for approximately 127,000 child support cases.

The Honorable Board of Supervisors
December 18, 2007
Page 2

This is a direct service program which services the public on-site in the service area encompassing the Third District. CSSD provides child support case management for approximately 127,000 cases with an average number of 1,100 scheduled interviews per month. The facility also serves as a mandatory archival file retention space for caseload record storage.

**IMPLEMENTATION OF STRATEGIC PLAN GOALS**

The Countywide Strategic Plan directs that we invest in public infrastructure in order to strengthen the County's fiscal capacity. The proposed lease supports this strategy (Goal 4, Strategy 2, Objective 2), with the consolidation of department services to better serve constituents. This proposed lease complies with the Strategic Asset Management Principles, as shown in Attachment A.

**FISCAL IMPACT/FINANCING**

This lease amendment is for a five-year renewal. The cost for the first year shall not exceed $1,342,045 based on the terms and conditions of Lease Amendment No. 3, which has Consumer Price Index (CPI) increases and limits annual rental adjustments to a minimum of three (3) percent, and a maximum of five (5) percent annually over the five-year term.

The Honorable Board of Supervisors
December 18, 2007
Page 3

| 15531 VENTURA BOULEVARD, ENCINO | EXISTING LEASE NO. 66261 | FIVE-YEAR LEASE RENEWAL | CHANGE |
|---|---|---|---|
| Area (square feet) | 43,775 | 43,775 | None |
| Term | 10/16/02 – 10/15/07 month-to-month | Upon Board approval | + five years |
| Annual Base Rent | $1,290,428 | $1,342,045 | + $51,616 (four (4) percent increase) |
| Parking (included in base rent) | 145 parking spaces | 145 parking spaces | None |
| Cancellation | County may cancel on the Anniversary date after the 60th month upon 120 days' prior written notice | No cancellation during the initial five-year renewal | No cancellation during the initial five-year renewal |
| Tenant Improvements | None | None | None |
| Option to Renew | One five-year option | Added one five-year option with right to cancel at the 36th and 48th months of option period on 60 days prior written notice | Cancellation at the 36th and 48th month |
| Rental Adjustment | Annual CPI increases not to exceed four (4) percent annually of base year | Annual CPI increases with a minimum of three (3) percent and a maximum of five (5) percent of the base year | Minimum three (3) percent to a maximum of five (5) percent |

Sufficient funding for the proposed five-year extension is included in the 2007-08 Rent Expense budget and will be charged back to CSSD. The costs associated with the proposed lease will be fully funded 34 percent State and 66 percent Federal funded.

## FACTS AND PROVISIONS/LEGAL REQUIREMENTS

CSSD has been at this location since the building was refurbished for County use in 1992. The Landlord has enclosed the center court-yard with a new roof pavilion, installed new carpet, painted and updated the HVAC within the last 24 months.

The Honorable Board of Supervisors
December 18, 2007
Page 4

The proposed five-year renewal provides 43,775 rentable square feet and 145 parking spaces. The lease also contains the following provisions:

- The renewal commences upon Board approval and ends five years thereafter;
- There are no tenant improvements included in this lease;
- Parking for the staff and visitors is available on-site;
- The Lease is full-service and Landlord is responsible for all maintenance and utilities;
- There is no cancellation provided during the initial five-year renewal; and
- County has the right at the 36th and 48th month of the Option Period, if exercised, to cancel upon 60 days' prior written notice.

## NEGATIVE DECLARATION/ENVIRONMENTAL IMPACT REPORT

The CEO has made an initial study of environmental factors and has concluded that this project is exempt from CEQA as specified in Class 1, of the Environmental Document Reporting Procedures and Guidelines adopted by your Board on November 17, 1987, and Section 15061 (b) (3) of the State CEQA Guidelines.

## IMPACT ON CURRENT SERVICES (OR PROJECTS)

The current lease expired on October 15, 2007, and is currently on a month-to-month holdover pending approval of the five-year lease renewal. There has been no disruption of services to the public.

CEO Real Estate staff surveyed the area within the Division I Service Center area as specified by CSSD. Staff was able to identify one site within the surveyed area that could accommodate this requirement, but an analysis of the five-year renewal and the cost of relocation and improvements to a new site demonstrated that remaining at the site for the next five years was more economical than moving to a smaller facility. CSSD has no budgeted funding available in the immediate future to cover relocation and tenant improvements. An analysis was completed in collaboration with CSSD, to compare the costs of downsizing, relocating or remaining at the current location. An analysis of this projected costs along with a competitive renewal offer from the current Landlord demonstrated that CSSD can remain at the existing facility without a budget increase. This five-year renewal recommendation is the most acceptable and economically viable option for CSSD at this time. Attachment B shows all County-owned and leased facilities within the surrounding Encino/Van Nuys area and there are no County-owned or leased facilities available for the programs.

The Honorable Board of Supervisors
December 18, 2007
Page 5

Based upon a market survey of similar properties in the Encino/Van Nuys area, staff has determined that the base rental range including parking for similar properties is between $33.00 and $36.00 per square foot per year full-service gross. Thus, the $30.65 base annual rent of the proposed lease renewal represents a rate below the lower level range of market for the area.

## CONCLUSION

It is requested that the Executive Officer, Board of Supervisors return two certified copies of the Minute Order and the adopted, stamped Board letter to the CEO, Real Estate Division, 222 South Hill Street, 4th Floor, Los Angeles, CA 90012.

Respectfully submitted,

WILLIAM T FUJIOKA
Chief Executive Officer

WTF:DL:JSE
CEM:TS:hd

Attachments (2)

c: County Counsel
   Child Support Services Department

15531Ventura.b

Attachment A

**CHILD SUPPORT SERVICES DEPARTMENT**
**DIVISION I DISTRICT SERVICE CENTER**
**15531 VENTURA BOULEVARD, ENCINO**
Asset Management Principles Compliance Form[1]

| 1. | | Occupancy | Yes | No | N/A |
|---|---|---|---|---|---|
| | A | Does lease consolidate administrative functions?[2] | | | X |
| | B | Does lease co-locate with other functions to better serve clients?[2] **There is space available but we don't have a current need for additional space.** | | | X |
| | C | Does this lease centralize business support functions? | | | X |
| | D | Does this lease meet the guideline of 200 sq. ft of space per person?[2] **Ratio is 1/280 sq. ft. The space does not meet the 200 sq. ft. per person guidelines and down sizing was recommended. After analysis and budget review it is recommended that CSSD remaining at this location, at the 1/280 sq.ft.ratio is the most viable option at this time.** | | X | |
| 2. | | **Capital** | | | |
| | A | Is it a substantial net County cost (NCC) program? **100 % State and Federal funding** | | X | |
| | B | Is this a long term County program? | X | | |
| | C | If yes to 2 A or B; is it a capital lease or an operating lease with an option to buy? | | X | |
| | D | If no, are there any suitable County-owned facilities available? | | X | |
| | E | If yes, why is lease being recommended over occupancy in County-owned space? | | | X |
| | F | Is Building Description Report attached as Attachment B? | X | | |
| | G | Was build-to-suit or capital project considered? **A capital project is planned within the next four to six years.** | X | | |
| 3. | | **Portfolio Management** | | | |
| | A | Did department utilize CEO Space Request Evaluation (SRE)? | X | | |
| | B | Was the space need justified? | X | | |
| | C | If a renewal lease, was co-location with other County departments considered? | | X | |
| | D | Why was this program not co-located? | | | |
| | | 1. ___ The program clientele requires a "stand alone" facility. | | | |
| | | 2. _x_ No suitable County occupied properties in project area. | | | |
| | | 3. _x_ No County-owned facilities available for the project. | | | |
| | | 4. ___ Could not get City clearance or approval. | | | |
| | | 5. ___ The Program is being co-located. | | | |
| | E | Is lease a full service lease? | X | | |
| | F | Has growth projection been considered in space request? | X | | |
| | G | Has the Dept. of Public Works completed seismic review/approval? | X | | |
| | | [1]As approved by the Board of Supervisors 11/17/98 | | | |
| | | [2]If not, why not? | | | |

Attachment B

## SPACE SEARCH, WITHIN SERVICE AREA OF DIVISION I DISTRICT
## CHILD SUPPORT SERVICES DEPARTMENT

| LACO | FACILITY NAME | ADDRESS | SQ. FT. GROSS | SQ. FT. NET | OWNERSHIP | SQ. FT. AVAIL |
|---|---|---|---|---|---|---|
| 5858 | DHS-PACOIMA PUBLIC HEALTH CENTER | 13300 VAN NUYS BLVD. PACOIMA 91331 | 5404 | 3058 | OWNED | NONE |
| A213 | DHS NORTH DISTRICT HEALTH FACILITIES OFFICE | 15643 SHERMAN WAY, VAN NUYS 91406 | 3712 | 3600 | LEASED | NONE |
| A316 | SHERIFF NORTH HILLS TRAP | 8353 N SEPULVEDA BLVD NORTH HILLS 91343 | 1500 | 1500 | LEASED | NONE |
| D310 | DPSS EAST VALLEY WS DISTRICT OFFICE | 14545 LANARK ST. PANORAMA CITY 91402 | 96360 | 96360 | OWNED | NONE |
| 6359 | MID VALLEY SAN FERNANDO VALLEY SERVICE CENTER | 17555 VAN NUYS BLVD. VAN NUYS 91405 | 17698 | 10623 | FINANCED | NONE |
| A383 | DHS SAN FERNANDO DIST ENVIRONMENTAL HEALTH | 6851 LENNOX AVENUE VAN NUYS 91405 | 7537 | 7180 | LEASED | NONE |
| A494 | PROBATION VAN NUYS JUVENILE SERVICES ANNEX | 7100 VAN NUYS BLVD., VAN NUYS 91405 | 1900 | 1710 | LEASED | NONE |
| A494 | PROBATION VAN NUYS JUNENILE SERVICES | 7100 VAN NUYS BLVD.,VAN NUYS 91405 | 2484 | 2360 | LEASED | NONE |
| A491 | PROBATION VAN NUYS JUVENILE SERVICES | 14540 HAYNES ST. VAN NUYS 91411 | 13500 | 11475 | LEASED | NONE |
| A585 | APD VAN NUYS OFFICE | 14553 DELANO ST VAN NUYS 91411 | 2750 | 2612 | LEASED | NONE |
| 4705 | PROBATION EAST SAN FERNANDO VALLEY AREA OFFICE | 14414 W DELANO ST VAN NUYS 91401 | 15825 | 8362 | OWNED | NONE |
| 5273 | VAN NUYS COUNTY ADMINISTRATIVE CENTER | 14340 W SYLVAN ST. VAN NUYS 91401 | 9849 | 6992 | OWNED | NONE |
| 7278 | VAN NUYS COURTHOUSE EAST | 6230 SYLMAR AVE VAN NUYS 91401 | 180296 | 88650 | OWNED | NONE |
| 4400 | VAN NUYS COURTHOUSE WEST | 14400 ERWIN ST VAN NUYS 91402 | 320931 | 125801 | FINANCED | NONE |
| Y472 | VAN NUYS COURTHOUSE BLDG. A | 6280 SYLMAR ST VAN NUYS 91401 | 4740 | 3106 | OWNED | NONE |
| Y473 | VAN NUYS COURTHOUSE BLDG. B | 6280 SYLMAR ST VAN NUYS 91401 | 4740 | 3148 | OWNED | NONE |
| Y474 | VAN NUYS COURTHOUSE BLDG. C | 6280 SYLMAR ST VAN NUYS 91401 | 4740 | 3148 | OWNED | NONE |
| Y476 | VAN NUYS COURTHOUSE BLDG. E | 6280 SYLMAR ST VAN NUYS 91401 | 3373 | 1987 | OWNED | NONE |
| Y477 | VAN NUYS COURTHOUSE BLDG. F | 6280 SYLMAR ST VAN NUYS 91401 | 576 | 495 | OWNED | NONE |
| T027 | VAN NUYS COURTHOUSE TRAILER C | 6830 SYLMAR ST VAN NUYS 91401 | 3164 | 2824 | OWNED | NONE |
| T026 | VAN NUYS COURTHOUSE TRAILER D | 6830 SYLMAR ST VAN NUYS 91401 | 8116 | 7086 | OWNED | NONE |
| Y442 | VAN NUYS COURTHOUSE TRAILER F | 14400 W DELANO ST VAN NUYS 91401 | 11037 | 6470 | OWNED | NONE |
| A276 | DCFS REGION V NORTH HOLLYWOOD SERVICE OFFICE | 12020 CHANDLER BLVD. NORTH HOLLYWOOD | 43258 | 41106 | LEASED | NONE |

AMENDMENT NO. 3 TO LEASE NO. 66261
15531 VENTURA BLVD., ENCINO
CHILD SUPPORT SERVICES DEPARTMENT

This Amendment No. 3 to Lease No. 66261 is made and entered into this day of ,2007, by and between M & A GABAEE ("Lessor"), and the COUNTY OF LOS ANGELES, a body politic and corporate ("Lessee").

WHEREAS, the COUNTY OF LOS ANGELES, as Lessee, has entered into that certain Lease No. 66261 dated July 28, 1992, ("Lease") for approximately 43,775 rentable square feet of office space in a building located at 15531 Ventura Blvd., Encino;

WHEREAS, the parties Amended Lease No. 66261 with Lease Amendment No. 2 on October 1, 2002 ("Amendment No. 2") to extend the term of the Lease for an additional five year period which began on October 16, 2002 and expired on October 15, 2007 ("Lease Extension");

Whereas, the Lease has continued through mutual holdover beginning October 16, 2007 and terminating November 30, 2007 ("Holdover Period");

Whereas, parties have not entered into a lease amendment no. 1; and

Whereas, the parties now desire to amend said Lease No. 66261 to increase the term of the Lease beyond the Holdover Period termination date for an additional term of five years ("Second Lease Extension"), commencing December 1, 2007 or upon approval by the Board of Supervisors, County of Los Angeles ("Board of Supervisors"), whichever occurs last.

NOW, THEREFORE, in consideration of the foregoing recitals, which are hereby deemed a contractual part hereof and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and the rents, covenants and agreements herein contained, and intended to be legally bound, Lessor and Lessee hereby covenant and agree as follows:

1.   Paragraph 2 of the Lease and Paragraph 1 of Amendment No. 2, TERM, of the Lease and Amendment No. 2 shall be amended by adding the following:

*The term of Second Lease Extension shall commence upon termination of the Holdover Period on November 30, 2007 or upon approval by the Board of Supervisors, whichever occurs last ("Second Lease Extension Commencement Date") and shall terminate five years thereafter ("Second Lease Extension Termination Date").*

Paragraph 2B of the Lease and Paragraph 1 of Amendment No. 2, OPTION TO RENEW are hereby deleted in its entirety and in its place shall be substituted

with the following:

*Provided Lessee is not in default, Lessee shall have the option to renew the Second Lease Extension for an additional period of five years under the same terms and conditions as described in paragraph 2B of the Lease subject to the the modifications of this Amendment NO. 3 ("Third Lease Extension"). Duringthe Third Lease Extension, Lessee shall continue to pay the Monthly Base Rent as due, which Monthly Base Rent shall continue to be adjusted in accordance with the terms of Paragraph 28 of the Lease. In the event that Lessee desires to exercisethe Third Lease Extension, Lessee shall deliver Lessor written notice of such exercise not less than 180 days prior to the Second Lease Extension Termination Date. The actual exercise of the Third Lease Extension shall be only by the Board of Supervisors prior to the expiration of theSecond Lease Extension.*

2. Paragraph 3 of the Lease and Paragraph 2 of Amendment No. 2, RENT, of are hereby deleted in its entirety and in its place shall be substituted with the following:

*Prior to the Second Lease Extension Commencement Date, and during the Holdover Period, Lessee shall pay Monthly Base Rent in the amount of $107,535.72 as required pursuant to the terms of the Lease and as adjusted in accordance with Paragraph 28 of the Lease upon the rental adjustment date as existing prior to the execution by all parties hereto of this Amendment No. 3. Beginning on the Second Lease Extension Commencement Date, the Monthly Base Rent payable with respect to the Premises shall be amended to be equal to One Hundred Eleven Thousand Eight Hundred Thirty-Seven and 15/100 ($111,837.15) per month, (i.e.; $2.554 per square foot, full service for the 45,775 square feet which make up the Premises, as defined in the Lease). All Monthly Base Rent payable under the Lease, as amended, is payable in advance by Auditor's General Warrant within fifteen days after the first day of each and every month of the term hereof provided Landlord files a payment voucher therefore prior to the Second Lease Extension Commencement Date and thereafter annually during the month of June with the Auditor of the County of Los Angeles.*

3. Paragraph 5. CANCELLATION of the Lease is hereby deleted in its entirety and in its place shall be substituted with the following:

*Lessee shall have the right to cancel the Lease on the 36th and 48th month of the Second Lease Extension period as stated in 2B of this Amendment No.3 by giving 60 days prior written notice*

4. Paragraph 6. HOLDOVER of the Lease is hereby deleted in its entirety and in its place shall be substituted with the following:

*In the event Lessee remains in possession of the Premises beyond the end of*

*the Second Lease Extension term without exercising the Third Lease Extension Term ("Hold Over") with the express consent of Lessor, such tenancy shall not exceed a period of sixty (60) days and shall remain subject to the applicable terms and conditions of the Lease, Amendment No. 2, and Amendment No. 3, and shall not be a renewal hereof, and the Monthly Base Rent then payable shall be that Monthly Base Rent payable under the applicable terms of the Lease, Amendment No. 2, and Amendment No. 3. Either party may during the Hold Over cancel this Lease by giving the other party not less than 60 days prior written notice.*

5.   Paragraph 23. GENERAL PROVISIONS of the Lease is hereby amended by adding the following:

R.   Community Business Enterprise

Lessor is encouraged to use Community Business Enterprises ("CBE") in all contracts when possible as sources for supplies, equipment, construction and services. This shall apply during any applicable tenant improvement construction, modular furniture installation and services to be provided during the Lease term.

Lessor shall use reasonable efforts to submit evidence of CBE participation by providing completed copies of the Community Business Enterprise Firm Information, form attached hereto as Exhibit "I", at the time of signing Amendment No. 3 and thereafter on an annual basis on or before December 30th of each year of the term of the Lease and any extension(s) thereof

S.   Lobbyists

Lessor and each County lobbyist or County lobbying firm as defined in Los Angeles County Code Section 2.160.010, retained by Lessor, shall fully comply with the County Lobbyist Ordinance, Los Angeles County Code Chapter 2.160. Failure on the part of Lessor or any County lobbyist or County lobbying firm retained by Lessor to fully comply with the County Lobbyist Ordinance shall constitute a material breach of the Lease, Amendment No. 2 and Amendment No. 3 and upon the occurance of which, County may immediately terminate or suspend the Lease, Amendment No. 2 and Amendment No. 3.

6.   Paragraph 27. RENTAL ADJUSTMENTS of the Lease is hereby deleted in its entirety and in its place shall be substituted the following:

A.   At the thirteenth month of this Second Lease Extension and every twelve months thereafter, the rent shall be adjusted in accordance with the CPI formula set forth
in Paragraph 27 B. The "Base Index" shall be the Index published for November 2007.

B. CPI Formula: The method for computing the annual rental adjustment shall be by reference to the Consumer Price Index for all Urban Consumers for the Los AngelesAnaheim-Riverside area, all items published by the United States Department of Labor, Bureau of Labor Statistics (1982-84-100), herein referred to as "Index".

The rental adjustment for the Net Base rent shall be calculated by multiplying the Lessor's base rent of $111,837.15, by a fraction, the numerator being the New Index which is the Index published for the month immediately preceding the month the adjustment is effective, which is the Index published for October, then add to the total result the amount needed to amortize Lessee's tenant improvements.

The formula shall be as follows:

[New Index]
[Base Index] X $111,837.15

The total of the Monthly Base Rent, the monthly cost to amortize additional tenant improvements and change orders, if any, shall be the new Monthly Base Rental rate, i.e.:

Base Rent
+    the amount to amortize additional Tenant Improvements, if any

+/- the amount to amortize change orders, if any = New Monthly Base Rent

If the Index is changed so that the base year of the Index differs from that used as of the commencement date of the Second Lease Extension, the Index shall be converted in accordance with the conversion factor published by the United State Department of Labor, Bureau of Labor Statistics. If the Index is discontinued or revised during the term of the Second Lease Extension, such other governmental Index or computation with which it is replaced shall be used in order to obtain substantially the same result as would be obtained if the Index had not been discontinued or revised. In the event the parties are unable to agree upon a substitute index (if the original index is discontinued without a replacement) then upon demand by either party, the matter shall be submitted to arbitration in accordance with Paragraph 22M for the purpose of determining an alternate method of computing the rent adjustment based upon the increase in the cost of living.

C. General Provisions: In no event shall the Monthly Base Rent adjustment based upon the CPI formula set forth in this Paragraph 27 result in an annual increase no less than three percent (3%) nor greater than five percent (5%) per year of the Monthly Base Rent of $111,837.15

9.     Paragraph 32. of the Lease and Paragraph 4 of Amendment No. 2, RIGHT TO REDUCE SQUARE FOOTAGE OF SPACE, shall be deleted in its entirety.

10. Paragraph 33. SOLICITATION OF CONSIDERATION shall be added to the Lease as follows:

*It is improper for any County Officer, employee or agent to solicit consideration, in any form, from a Lessor with the implication, suggestion or statement that the Lessor's provision of the consideration may secure more favorable treatment for the Lessor in the award of the Lease or subsequent amendments or that the Lessor's failure to provide such consideration may negatively affect the County's consideration of the Lessor's submission. A Lessor shall not offer or give, either; directly or through an intermediary, consideration, in any form, to a County officer, employee or agent for the purpose of securing favorable treatment with respect to the award of the Lease.*

*A Lessor shall immediately report any attempt by a County office, employee or agent to solicit such improper consideration. The report shall be made either to the County manager charged with the supervision of the employee or to the County AuditorController's's Employee Fraud Hotline at (213) 974-0914 or (800) 544-6861. Failure to report such solicitation may result in the Lessor's submission being eliminated from consideration.*

11. Paragraph 34. LIMITATION OF AUTHORITY shall be added to the Lease as follows:

*Only the Board of Supervisors has the authority, by formally approving and/or executing this Lease Amendment No. 3, to bind the County to the terms included herein. Lessor understands that no material terms of the Lease, Amendment No. 2 or Amendment No. 3 may be altered or deleted, nor may any new material terms be added to the Lease, Amendment No. 2 or Amendment No. 3, without the express written approval of the Board of Supervisors, either through an amendment to the Lease or by other formal Board action.*

*No County officer, employee, agent, or independent contractor has any authority to alter, add or delete the material terms of the Lease, Amendment No. 2 or Amendment No. 3; and Lessor may not rely upon any representations to the contrary.*

*This limitation of authority applies to all material terms of the Lease, Amendment No. 2 or Amendment No. 3 including, without limitation, any monetary ceiling established for tenant improvements or other project costs of Lessor which are subject to reimbursement by County. County shall not reimburse Lessor for any expenses which exceed this ceiling.*

12. All other terms and conditions of the Lease No. 66261 and Amendment No. 2 shall remain the same and in full force and effect.

13. Lease Amendment No. 3 contains the entire agreement of the parties with respect to the Second Lease Extension provision contained herein. Upon approval by the Board of Supervisors, Amendment No. 3 supersedes any and all prior agreements of the Lessor and Lessee with respect to such provisions.

**IN WITNESS WHEREOF,** the Lessor has executed Amendment No. 3 or caused it to be executed, and the County of Los Angeles by order of its Board of Supervisors, has caused Amendment No. 3 to be executed on its behalf by the Chairman of said Board and attested by the Clerk thereof the day, month, and year first above written.

LESSOR
M & A GABAEE, *a California limited Partnership, by Sancam Inc. general Partner*
By: ~~MARK GABAEE~~

By: _____, *President*
    Mark Gabaee

ATTESTED:

SACHI A. HAMAI
Executive Officer-Clerk
of the Board of Supervisors

By: _____
Deputy



LESSEE

COUNTY OF LOS ANGELES
By: _____
Chair, Board of Supervisors

APPROVED AS TO FORM:

RAYMOND G. FORTNER JR.
County Counsel

By _____
Deputy

16    DEC 1 8 2007

SACHI A. HAMAI
EXECUTIVE OFFICER

66261 Supplement No. 3

I hereby certify that pursuant to Section 25103 of the Government Code, delivery of this document has been made.

SACHI A. HAMAI
Executive Officer
Clerk of the Board of Supervisors

By _____
     Deputy

**EXHIBIT "I"**
**COMMUNITY BUSINESS ENTERPRISE FIRM**

INSTRUCTIONS: All Lessors shall submit this form on an annual basis on or before December 30th of each year of the term of this agreement as evidence of CBE participation. The information requested below is for statistical purposes only. On final analysis and consideration, leases will be selected without regard to gender, race, creed, or color. Categories listed below are based on those described in 49 CFR Section 23.5.

I.   MINORITY/WOMEN PARTICIPATION IN FIRM (Partners, Associates Partners, Managers, Staff, etc.)

FIRM: NAME
ADDRESS CONTACT TELEPHONE NO.
TOTAL NUMBER OF EMPLOYEES IN FIRM:

| | OWNERS/PARTNERS ASSOCIATE PARTNERS | MANAGERS | STAFF |
|---|---|---|---|
| Black/African American | _____ | _____ | _____ |
| Hispanic/Latin American | _____ | _____ | _____ |
| Asian American | _____ | _____ | _____ |
| Portuguese American | _____ | _____ | _____ |
| American Indian/ Alaskan Native | _____ | _____ | _____ |
| All Others | _____ | _____ | _____ |
| Women (Should be included in counts above and also reported here separately) | _____ | _____ | _____ |

II.   PERCENTAGE OF MINORITY/WOMEN OWNERSHIP IN FIRM

TYPE OF BUSINESS STRUCTURE:
(Corporation. Partnership, Sole Proprietorship, etc.)
TOTAL NUMBER OF OWNERSHIP/PARTNERS, ETC.:
PERCENTAGE OF OWNERSHIP

| | |
|---|---|
| Black/African American | _____ |
| Hispanic/Latin American | _____ |
| Asian American | _____ |
| Portuguese American | _____ |
| American Indian/ Alaskan Native | _____ |
| All Others | _____ |
| Women (Should be included in counts above and also reported here separately) | _____ |

III.   CURRENT CERTIFICATION AS MINORITY/WOMEN-OWNED FIRM

IS YOUR FIRM CURRENTLY CERTIFIED AS A MINORITY OWNED BUSINESS FIRM BY THE:

State of California?   Yes   No
City of Los Angeles?   Yes   No
Federal Government?   Yes   No

IV.   FIRM'S DESIRE NOT TO RESPOND TO INFORMATION

WE DO NOT WISH TO PROVIDE THE INFORMATION REQUIRED IN THIS FORM.
Firm Name:
Signed: _____
Date:   10-15-07
Title:   President