# Exhibit G



County of Los Angeles
# CHIEF ADMINISTRATIVE OFFICE
713 KENNETH HAHN HALL OF ADMINISTRATION • LOS ANGELES, CALIFORNIA 90012
(213) 974-1101
http://cao.lacounty.gov

**DAVID E. JANSSEN**
Chief Administrative Officer

Board of Supervisors
GLORIA MOLINA
First District

YVONNE B. BURKE
Second District

February 20, 2007

ZEV YAROSLAVSKY
Third District

DON KNABE
Fourth District

MICHAEL D. ANTONOVICH
Fifth District

The Honorable Board of Supervisors
County of Los Angeles
383 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012

Dear Supervisors:

**AMENDMENT NO. 4 TO LEASE NO. 14714
DEPARTMENT OF PUBLIC SOCIAL SERVICES
2910 WEST BEVERLY BOULEVARD, LOS ANGELES
(FIRST) (3 VOTES)**

### IT IS RECOMMENDED THAT YOUR BOARD:

1.  Approve and instruct the Chairman to sign the attached Amendment No. 4 with OPPIDAN, LLC (Lessor) to extend the term of Lease No. 14714 for a five-year period for the continued occupancy of 42,288 rentable square feet of office space for the Department of Public Social Services (DPSS), at 2910 West Beverly Boulevard, Los Angeles, at an initial annual rent of $801,780, which is approximately 90 percent subvention funded.  The five-year extension in Amendment No. 4 to Lease No. 14714 will commence upon approval by your Board.

2.  Consider the attached Negative Declaration, together with the fact that no comments were received during the public review process, find that the project will not have a significant effect on the environment, find that the Negative Declaration reflects the independent judgment of the County to approve the Negative Declaration, find that the project will have no adverse effect on wildlife resources, and authorize the Chief Administrative Officer (CAO) to complete and file a Certificate of Fee Exemption for the project.

### PURPOSE/JUSTIFICATION OF RECOMMENDED ACTION

Approval of this proposed Amendment No. 4 to Lease No. 14714 will allow the County to exercise its option to extend the term of the lease for five years, add a new five-year option and require the Landlord, by Amendment, to construct and pay the cost of interior and exterior improvements.

*"To Enrich Lives Through Effective And Caring Service"*

The Honorable Board of Supervisors
February 20, 2007
Page 2

DPSS has occupied the facility since 1970. In 1999, DPSS refurbished the space to provide the Los Angeles Eligibility Automation Determination Evaluation and Reporting System (LEADER) upgrades and allow for a more efficient use of the offices. Retaining the facility and parking with existing and proposed improvements will provide continued housing for the program and is a more cost effective alternative than relocating and constructing new Tenant Improvements (TI) at another location.

## IMPLEMENTATION OF STRATEGIC PLAN GOALS

The Countywide Strategic Plan directs that we strengthen the County's fiscal capacity (Goal 4). In this case, we have consolidated multiple departmental programs, i.e., GAIN and Medi-Cal.

## FISCAL IMPACT/FINANCING

The annual base rent for the subject facility will initially be $801,780. The base rent will be adjusted on an annual basis by Consumer Price Index (CPI) to a minimum of three percent and a maximum of five percent annually.

| 2910 W. Beverly | EXISTING LEASE | AMENDED LEASE | CHANGES |
|---|---|---|---|
| Area (Square feet) | 42,288 square feet | 42,288 square feet | None |
| Term | 12/21/1999 to 12/21/2006 (effective 12/22/06 month-to-month) | Five years from Board approval | Five years |
| Annual Base Rent | $658,765 ($14.16/sq.ft.) | $801,780 ($18.96/sq.ft.)* | +$143,015($4.80 psf) |
| Parking Included in Rent | 210 off-street spaces | 210 off-street spaces | None |
| Cancellation - Initial five-year term. | None. Lease is now on month-to-month. | No cancellation during the five-year lease extension. | None |
| Option to Renew | None | One (5-year) option | One (5-year) option |
| Cancellation- During new option period | None | Anytime after 36th month if the new 5-year option is exercised. | Anytime after 36th month. |
| Rental Adjustment | Annual CPI with a cap of 3 percent. | Annual CPI with a cap of 5 percent minimum of 3 percent. | + 2 percent cap + 3 percent minimum |

* Base rent includes the cost of a day-porter (8 hours per day), HVAC upgrades, carpet, paint and exterior improvements to the building entrance. (Total costs estimated to be $950,000 over the lease term.)

The Honorable Board of Supervisors
February 20, 2007
Page 3

Sufficient funding for the proposed lease amendment is included in the 2006-2007 Rent
Expense Budget and will be charged back to DPSS. Sufficient funding is available in
DPSS operating budgets to cover the proposed lease costs. The annual lease cost for
DPSS is approximately 90 percent subvention funded.

**FACTS AND PROVISIONS/LEGAL REQUIREMENTS**

DPSS has occupied 42,288 gross rentable square feet of office space, plus parking for
210 vehicles for staff and participants since 1970. The office houses 227 DPSS staff
providing job counseling to GAIN participants, houses Medi-Cal outstation eligibility and
support staff that provides Medi-Cal services to participants at hospitals, clinics and
health facilities.

Amendment No. 4 extends the term five years and contains the following provisions:

- Five-year lease renewal. The new base rent during the first year is $801,780.

- The lease continues on a modified full service basis. The County is responsible for
  all utility costs.

- The Lessor will provide a day-porter, a minimum of eight hours per day in addition to
  being responsible for all interior and exterior maintenance.

- The Lessor will provide parking for 210 vehicles included in the base rental rate and
  is sufficient to meet the parking needs of the staff.

- The Lessor will install new carpet, paint interior, upgrade the HVAC system and
  provide exterior improvements to the main entrance of the building.

- An additional five-year option to renew with a cancellation right after the 36th month
  of the option period.

The Honorable Board of Supervisors
February 20, 2007
Page 4

CAO Real Estate staff surveyed the service area to determine the market rate of comparable sites. Based upon said survey, staff has established that the base rental range including parking and TI for similar property is between $18.00 and $24.00 per square foot per year modified full-service. Thus, the base annual rent of $18.96 per square foot for the base lease cost is at the lower market range for this area. Attachment B shows County-owned and leased facilities within the search area for these programs and none are available to house these programs.

The Department of Public Works has inspected this facility and concurs that it meets current standards for the County's occupancy, including ADA accessibility.

The proposed leased premises had no additional space available to house a child care center. However, there are several private child care centers available for County employees within a five-mile radius of the subject location.

## NEGATIVE DECLARATION/ENVIRONMENTAL IMPACT REPORT

The CAO has made an initial study of environmental factors and has concluded that there is no significant impact on the environment and no adverse effect on the wildlife resources. Accordingly, a Negative Declaration has been prepared and a notice posted at the site as required by the California Environmental Quality Act (CEQA) and the California Administrative Code, Section 15072. Copies of the completed Study, the resulting Negative Declaration, and the Notice of Preparation of Negative Declaration as posted are attached. No comments to the Negative Declaration were received. A fee must be paid to the State Department of Fish and Game when certain notices are filed with the Registrar-Recorder/County Clerk. The County is exempt from paying this fee when your Board finds that a project will have no impact on wildlife resources.

## IMPACT ON CURRENT SERVICES (OR PROJECTS)

It is the finding of the CAO that the proposed Amendment No. 4 to Lease No. 14714 will allow DPSS to continue using the office and parking facilities. DPSS concurs with this recommendation.

The Honorable Board of Supervisors
February 20, 2007
Page 5

## CONCLUSION

It is requested that the Executive Officer, Board of Supervisors return two originals of the executed Amendment No. 4 to Lease No. 14714, two certified copies of the Minute Order and the adopted, stamped Board letter to the CAO, Real Estate Division at 222 South Hill Street, 4th Floor, Los Angeles, CA 90012 for further processing.

Respectfully submitted,

DAVID E. JANSSEN
Chief Administrative Officer

DEJ:WLD
CEM:TJS:hd

Attachments (2)

c:   County Counsel
     Auditor-Controller
     Department of Public Social Services

2910wbeverly.b

Attachment A

## DEPARTMENT OF PUBLIC SOCIAL SERVICES
## 2910 W BEVERLY BOULEVARD, LOS ANGELES

### Asset Management Principles Compliance Form[1]

| 1. | Occupancy | | Yes | No | N/A |
|---|---|---|---|---|---|
| | A | Does lease consolidate administrative functions?[2] | | | X |
| | B | Does lease co-locate with other functions to better serve clients?[2] | X | | |
| | C | Does this lease centralize business support functions?[2] | | | X |
| | D | Does this lease meet the guideline of 200 sq. ft of space per person?[2]   **No, the space is used to house additional field staff. Additionally, administrative and GAIN training to clients uses more space than 200 sq. ft. of space per person.** | | X | |
| 2. | Capital | | | | |
| | A | Is it a substantial net County cost (NCC) program?  **90% State and Federal funding.** | | X | |
| | B | Is this a long term County program? | X | | |
| | C | If yes to 2 A or B; is it a capital lease or an operating lease with an option to buy? | | X | |
| | D | If no, are there any suitable County-owned facilities available? | | X | |
| | E | If yes, why is lease being recommended over occupancy in County-owned space? | | | X |
| | F | Is Building Description Report attached as Attachment B? | X | | |
| | G | Was build-to-suit or capital project considered?  **A build-to-suit project has not been considered at this time and the process to solicit, negotiate and build a build-to-suit facility could take up to five years. This Lease extension is for a five-year term which would allow future consideration of a build-to-suit or capital project.** | | X | |
| 3. | Portfolio Management | | | | |
| | A | Did department utilize CAO Space Request Evaluation (SRE)? | X | | |
| | B | Was the space need justified? | X | | |
| | C | If a renewal lease, was co-location with other County departments considered? | X | | |
| | D | Why was this program not co-located? | | | |
| | | 1. ____  The program clientele requires a "stand alone" facility. | | | |
| | | 2. _____  No suitable County occupied properties in project area. | | | |
| | | 3 _____  No County-owned facilities available for the project. | | | |
| | | 4. _____  Could not get City clearance or approval. | | | |
| | | 5. _X___  The Program is being co-located. | | | |
| | E | Is lease a full service lease?[2]  **The Landlord will not pay for utilities, therefore County is responsible for all costs associated with the consumption of utilities.** | | X | |
| | F | Has growth projection been considered in space request? | | X | |
| | G | Has the Dept. of Public Works completed seismic review/approval? | X | | |
| | | [1]As approved by the Board of Supervisors 11/17/98 | | | |

[2]If not, why not?

Attachment B

## Department of Public Social Services
## 2910 West Beverly Boulevard, Los Angeles

| LACO | FACILITY NAME | ADDRESS | SQUARE FEET GROSS | SQUARE FEET NET | OWNERSHIP | SQUARE FEET AVAILABLE |
|---|---|---|---|---|---|---|
| A424 | DPSS-EQUITABLE PLAZA BUILDING | 3435 WILSHIRE BLVD, LOS ANGELES 90010 | 65,872 | 62,578 | LEASED | NONE |
| A532 | HEALTH-METROPLEX BUILDING | 3530 WILSHIRE BLVD, LOS ANGELES 90010 | 62,901 | 56,611 | LEASED | NONE |
| A160 | MENTAL HEALTH-HDQRTRS OFFICE ANNEX | 3160 W 6TH ST, LOS ANGELES 90020 | 60,800 | 28,372 | LEASED | NONE |
| A336 | SHERIFF – WILSHIRE CENTRE BUILDING | 3055 WILSHIRE BLVD, LOS ANGELES 90010 | 7,755 | 7,115 | LEASED | NONE |
| A369 | DCFS-PROCUREMENT AND SPECIAL SERVICES OFFICE | 501 SHATTO PL, LOS ANGELES 90020 | 17,751 | 15,976 | LEASED | NONE |
| A408 | DCFS-THE U S BORAX BUILDING | 3075 WILSHIRE BLVD, LOS ANGELES 90010 | 132,488 | 105,568 | LEASED | NONE |
| A409 | DCSS-WILSHIRE PLAZA BUILDING | 3303 WILSHIRE BLVD, LOS ANGELES 90010 | 4,000 | 3,900 | LEASED | NONE |
| A413 | HUMAN RESOURCES-WILSHIRE SQUARE TWO BUILDING | 3333 WILSHIRE BLVD, LOS ANGELES 90010-4109 | 62,479 | 53,176 | LEASED | NONE |
| A425 | DCFS-DEPARTMENTAL HEADQUARTERS BLDG | 425 SHATTO PL, LOS ANGELES 90020 | 80,756 | 76,065 | LEASED | NONE |
| C500 | PROBATION-PRETRIAL SERVICES/ BAIL DEVIATION | 500 SHATTO PLACE, LOS ANGELES 90020 | 6,596 | 5,094 | LEASED | NONE |
| X317 | DCSS-LE SAGE COMPLEX 4 STORY BLDG | 3175 W 6TH ST, LOS ANGELES 90020 | 52,230 | 42,341 | OWNED | NONE |
| X510 | DHS-LESAGE COMPLEX 2 STORY BLDG | 510 S VERMONT AVENUE, LOS ANGELES 90020 | 31,540 | 24,840 | OWNED | NONE |
| X532 | DCSS-LE SAGE COMPLEX 1 STORY BLDG | 532 S VERMONT AVE, LOS ANGELES 90020 | 14,126 | 10,314 | OWNED | NONE |
| X550 | MENTAL HEALTH-LE SAGE COMPLEX TWR | 550 S VERMONT AVENUE, LOS ANGELES 90020-1991 | 171,651 | 149,668 | OWNED | NONE |
| Y193 | PARKS & RECREATION-HEADQUARTERS BLDG | 433 S VERMONT AVENUE, LOS ANGELES 90020 | 31,862 | 21,777 | OWNED | NONE |
| B695 | DCFS-IMMUNIZATION PRGM/ ENVIRONMENTAL HEALTH | 695 S VERMONT AVENUE, LOS ANGELES 90010 | 14,274 | 12,847 | LEASED | NONE |
| A600 | CENTRAL CIVIL WEST COURTHOUSE | 600 S COMMONWEALTH AVENUE, LOS ANGELES 90005 | 204,019 | 151,696 | LEASED | NONE |
| A360 | DPSS-METRO NORTH AP/ CALWORKS DISTRICT OFFICE | 2601 WILSHIRE BLVD, LOS ANGELES 90057 | 62,000 | 60,140 | LEASED | NONE |
| B922 | DPSS-WILSHIRE SPECIAL DISTRICT OFFICE | 2415 W 6TH ST, LOS ANGELES 90057 | 46,228 | 42,065 | LEASED | NONE |
| 5353 | DPSS-METRO SPECIAL DISTRICT OFFICE | 2707 S GRAND AVE, LOS ANGELES 90007 | 115,242 | 89,650 | OWNED | NONE |
| D015 | DPSS-CATHOLIC CHARITIES COMPUTER CENTER | 1530 JAMES M. WOOD BLVD, LOS ANGELES 90017 | 200 | 200 | PERMIT | NONE |
| 6518 | THE ADAMS & GRAND BUILDING | 2615 S GRAND AVE, LOS ANGELES 90007 | 215,439 | 183,874 | OWNED | NONE |
| A388 | ALT PUBLIC DEF-WILSHIRE-BIXEL BLDG | 1055 WILSHIRE BLVD, LOS ANGELES 90017 | 6,500 | 6,175 | LEASED | NONE |
| 5266 | METROPOLITAN COURTHOUSE | 1945 S HILL ST, LOS ANGELES 90007 | 303,434 | 125,469 | FINANCED | NONE |
| 0155 | STANLEY MOSK COURTHOUSE | 111 N HILL ST, LOS ANGELES 90012 | 794,459 | 441,761 | OWNED | NONE |
| 5546 | DHS-CENTRAL PUBLIC HEALTH CENTER | 241 N FIGUEROA ST, LOS ANGELES 90012 | 60,924 | 34,748 | OWNED | NONE |
| A159 | DISTRICT ATTORNEY – FIGUEROA PLAZA | 201 N FIGUEROA ST, LOS ANGELES 90012 | 83,164 | 79,006 | LEASED | NONE |
| 5456 | HEALTH SERVICES ADMIN BUILDING | 313 N FIGUEROA ST, LOS ANGELES 90012 | 221,359 | 134,851 | OWNED | NONE |
| 0181 | KENNETH HAHN HALL OF ADMIN | 500 W TEMPLE STREET, LOS ANGELES 90012 | 958,090 | 591,457 | FINANCED | NONE |

| LACO | FACILITY NAME | ADDRESS | SQUARE FEET GROSS | SQUARE FEET NET | OWNERSHIP | SQUARE FEET AVAILABLE |
|---|---|---|---|---|---|---|
| 3155 | THE MUSIC CENTER – DE LISA BUILDING/THE ANNEX | 301 N GRAND AVENUE, LOS ANGELES 90012 | 27,582 | 17,978 | OWNED | NONE |
| A429 | CAO REAL ESTATE DIVISION/ SERVICE INTEGRATION | 222 S HILL STREET, LOS ANGELES 90012 | 29,013 | 26,082 | LEASED | NONE |
| A442 | MENTAL HEALTH-LAPD-SMART TEAM OFFICE | 419 S SPRING STREET, LOS ANGELES 90013 | 1,000 | 1,000 | GRATIS USE | NONE |
| A496 | PUBLIC DEFENDER-L.A LAW CENTER BUILDING | 207 S BROADWAY, LOS ANGELES 90013 | 7,100 | 6,750 | LEASED | NONE |
| 3154 | CLARA SHORTRIDGE FOLTZ CRIMINAL JUSTICE CENTER | 210 W TEMPLE STREET, LOS ANGELES 90012 | 1,036,283 | 399,535 | FINANCED | NONE |
| 0156 | HALL OF RECORDS | 320 W TEMPLE STREET, LOS ANGELES 90012 | 438,095 | 258,677 | OWNED | NONE |
| Y013 | DPSS-CIVIC CENTER DISTRICT/ GROW CENTER OFFICE | 813 E 4TH PLACE, LOS ANGELES 90013 | 39,956 | 25,158 | OWNED | NONE |
| A384 | AG COMM/WTS & MEASURES-DOWNTOWN MARKET OFFICE | 1320 E OLYMPIC BLVD, LOS ANGELES 90021 | 776 | 776 | LEASED | NONE |
| 5979 | CENTRAL ARRAIGNMENT COURTHOUSE | 429 BAUCHET STREET, LOS ANGELES 90012 | 83,692 | 30,638 | FINANCED | NONE |
| C863 | MED CTR-PATIENT FINANCIAL SERVICES OFFICE | 1910 N MAIN STREET, LOS ANGELES 90031 | 13,300 | 8,919 | LEASED | NONE |
| 5260 | CORONER-ADMINISTRATION/ INVESTIGATIONS BLDG | 1102 N MISSION BLVD, LOS ANGELES 90033 | 22,479 | 14,251 | OWNED | NONE |
| 3100 | EASTLAKE JUVENILE COURT-1 | 1601 EASTLAKE AVENUE, LOS ANGELES 90033 | 47,379 | 26,024 | OWNED | NONE |
| 4799 | PW CENTRAL YARD-DIVISION ADMINISTRATION | 1525 ALCAZAR STREET, LOS ANGELES 90033 | 10,438 | 7,224 | OWNED | NONE |
| C110 | MED CTR-EXPENDITURE MANAGEMENT | 2064 MARENGO STREET, LOS ANGELES 90033 | 9,602 | 7,010 | LEASED | NONE |
| X294 | PW CENTRAL YARD-SHOP OFFICE BLDG | 2275 ALCAZAR STREET, LOS ANGELES 90033 | 1,400 | 1,260 | OWNED | NONE |
| 6578 | DPSS-METRO EAST AP DISTRICT OFFICE | 2855 E OLYMPIC BLVD, LOS ANGELES 90023 | 63,066 | 29,220 | OWNED | NONE |
| A436 | DPSS-EXPOSITION PARK FAMILY SERVICE CENTER | 3833 S VERMONT AVENUE, LOS ANGELES 90037 | 130,000 | 110,500 | LEASED | NONE |

AMENDMENT NO.4 TO LEASE NO.14714
DEPARTMENT OF PUBLIC SOCIAL SERVICES
2910 WEST BEVERLY BOULEVARD, LOS ANGELES

This Amendment No. 4 to Lease No. 14714 ("Amendment") is made and entered into
effective as of this _____ day of _____,2006 by and
between OPPIDAN, LLC, a California limited liability company, ("Lessor"), and the
COUNTY OF LOS ANGELES, a body politic and corporate, ("Lessee").

        WHEREAS, the Oswin Company, a Partnership, ("Oswin") as previous owner of
the property located at 2910 West Beverly Boulevard, Los Angeles, ("Property"), and
Lessee entered into a Lease bearing No. 14714 dated March 14, 1969, whereby Oswin
leased to Lessee approximately 42,288 gross square feet of office space together with
78,039 gross square feet of parking space for a term beginning September 1, 1970, and
ending August 31, 1995 for use by the Department of Public Social Services ("Lease");

WHEREAS, Oswin and Lessee entered into an Amendment No. 1 to Lease No. 14714
on August 22, 1995 to extend the lease term to August 31, 1996 and thereafter the
parties entered into an Amendment No.2 to Lease No. 14714 on October 29, 1996 to
extend the lease term to August 31, 1999; and, thereafter entered into Amendment No.
3 to Lease No. 14714 on December 21, 1999 and Lessee exercised the option therein
to further extend the Lease term to begin December 21, 1999 and end December 21,
2006; and Lessee has held over with Lessor's consent continuing the terms of the
Lease and the Lessee's right to exercise the option to extend the term, and

WHEREAS, Lessor purchased the Property from Oswin in October of 2000 subject to
the Lease, and Lessee is now desirous to exercise its option to further extend the term
of the Lease for five (5) years, provided Lessor agrees to all terms and conditions as set
forth herein.

NOW, THEREFORE, in consideration of the rents, covenants and agreements herein
contained, and intended to be legally bound, Lessor and Lessee hereby covenant and
agree the following amendments are effective upon the date above written:


1.  TERM.     Paragraph 3. Term, is amended to provide that the term of the Lease will
expire upon the later of December 21, 2011 or the date the Board of Supervisors of the
County of Los Angeles has approved the extension of the term for five (5) years.

2.  Option To Renew.     Paragraph 32. Options to Renew, of the Lease as amended,
is amended to add the following:

" Option No 3 to Renew
Lessee shall have the option to renew this Lease for a third additional term of five (5)
years commencing upon the later of December 21, 2011 or the date of exercise of
Option No. 3 by the Board of Supervisors. In the event that Lessee desires to exercise

option not less than one-hundred twenty (120) days prior to December 21, 2011. The actual exercise of the option shall be only by the Board of Supervisors at any time prior to the later of December 21, 2011 or the expiration date of any holdover period pursuant to Paragraph 6. of this Lease. Time is of the essence. During such option term, Lessee shall continue to pay the Base Rent as adjusted in accordance with the terms of Paragraph 29 of this Lease.

3.    RENT. Paragraph 5,6, and 7., Rental of the Lease, are deleted in their entirety and in its place shall be substituted the following:

        "Lessee shall continue to pay a monthly rent for the Premises in the amount of $66,815.04 per month, or $1.58 per square foot, ("Base Rent"). All items payable under this Lease, as amended, subject to the adjustments described herein below, shall be due and payable without demand on or before the first day of each calendar month, except that Rent for any fractional calendar month at the commencement or end of the Term shall be prorated on a daily basis. Lessor shall file a Payment Voucher annually therefore, during the month of June, with the Auditor of the County of Los Angeles (the "County").

4. MAINTENANCE AND REPAIRS. The Lease is amended by deleting Exhibit A and substituting therefore the Exhibit A attached hereto and incorporated herein by reference.

5.    RENTAL ADJUSTMENTS    Paragraph 29 Rental Adjustments of the Lease, is deleted in its entirety and in its place is substituted the following as new Paragraph 29:

        "29. Rental Adjustments.

        (a)    CPI. On January 1, (the "Adjustment Date") and on every anniversary of the Adjustment Date thereafter, Base Rent shall be adjusted by applying the CPI Formula set forth below.

        (b)    CPI Formula. The Index means the Consumer Price Index for all Urban Consumers for the Los Angeles-Riverside-Orange County area, all items published by the United States Department of Labor, Bureau of Labor Statistics (1982-84=100). The "CPI Formula" means Base Rent multiplied by a fraction, the numerator being the Index published for the month immediately preceding the month the adjustment is to be effective, and the denominator being the Index published for the month of December, 2006 ("Base Index").

        If the Index is changed so that the Index differs from that used as of December, 2006, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the Index is discontinued or revised during the Term of this Lease, such other governmental Index or computation with which it is replaced shall be used in order to obtain substantially the same results as would be obtained if the Index had not been discontinued or revised.

        (c)    Illustration of Formula. The formula for determining the new rent shall be as follows:

New   Index
[Base           x $66,815.04 (Base Rent)
Index}

+ Amount needed to amortize Lessee's Additional Lessee
Improvements, if any

+ Amount needed to amortize change order costs, if any

= "Monthly Rent"

(d)  Limitations on CPI Adjustment.  Notwithstanding the foregoing, in no
event shall the Base Rent CPI adjustment set forth above result in an annual rent
increase greater than five percent (5%) of the Base Rent or less than three percent
(3.0%) of the Base Rent

6.  CANCELLATION.  Paragraph 30, of the Lease is deleted in its entirety and in its
place shall be substituted the following:

"Should the Lessee exercise its option to renew this Lease for five (5) years
pursuant to Paragraph 32, Lessee shall have the right to cancel this Lease on or
anytime after December 21, 2014, by giving Lessor not less than ninety (90) days prior
written notice."

7.  PREMISES IMPROVEMENTS.  The Lease is amended by the addition of the
following as new Paragraph 38. Alteration and Preparation of Premises:

"38. Alteration and Preparation of Premises.  Lessor will cause, at his sole cost
and expense, to be constructed at the Premises, interior and exterior improvements, to
begin by February 19, 2007 and to be completed by June 19, 2007 within One Hundred
Eighty (180) days of the commencement date as follows:

Replace Carpet throughout (approximately 30,000 sf) with carpet tile, installation
includes lifting all modular furniture during installation.

Paint all interior walls, including hallways, common areas, restrooms, conference
rooms, and lunch/ break rooms. Lessor not responsible to move and paint behind
modular panels and or attached furniture.

HVAC-Project completion and Upgrade:

a)  Furnish and install Boiler which meets or exceeds AQMD energy efficiency
standards;

b)  Furnish and Install a new Chiller Barrel (whole assembly);

c)  Replace one compressor (which will restore HVAC system to 100% back-up;

d)  Furnish  and  Install  Honeywell  controls  via  PC  providing  remote  control
access to the HVAC system;

e)  Air Balance entire system; and

f)  Provide quarterly maintenance contract for service and maintenance on the
HVAC system during the term of the Lease.

Main Entrance Enclosure:

Furnish  and  install  decorative,  with  random  geometric  design,  wrought  iron
enclosure at the main entrance to the building.

8.  INDEMNIFICATION.  Paragraph 27 of the Lease as amended is hereby
deleted in its entirety and in its place shall appear the following:

"27.  Insurance And Indemnity.

(a)  Lessee's Indemnity.  Lessee shall indemnify, defend and hold
Lessor harmless from and against all loss, cost and expense, including attorneys' fees,
arising from any injury or damage to any person or property, occurring in or about the
Building or Premises as a result of any negligent act or omission or willful misconduct of
Lessee or its employees or arising from any breach or default under this Lease by
Lessee.  The foregoing provisions shall not be construed to make Lessee responsible
for loss, damage, liability or expense resulting from injuries to third parties caused by
the negligence or willful misconduct of Lessor, or its officers, contractors, licensees,
agents, employees or invitees.

(b)  Lessor's Indemnity  Lessor shall indemnify, defend and hold Lessee
harmless from and against all loss, cost and expense, including attorneys' fees, arising
from any injury or damage to any person or property, occurring in or about the Building
or Premises as a result of any negligent act, omission or willful misconduct of Lessor, or
its officers, contractors, licensees, agents, employees, guests, or visitors or arising from
any breach or default under this Lease by Lessor.  The foregoing provisions shall not be
construed to make Lessor responsible for loss, damage, liability or expense resulting
from injuries to third parties caused by the negligence or willful misconduct of Lessee, or
its officers, contractors, licensees, agents, employees or invitees.

(c)  Lessor's Insurance.  During the term of this Lease, Lessor
shall maintain the following insurance:

(i)    Commercial property insurance which shall (1) cover damage to Lessor's property, including improvements and betterments, from perils covered by the causes-of-loss special form (ISO form CP 10 30), and include ordinance or law coverage  (and coverage against acts of terrorism to the extent such coverage is reasonably available and priced at commercially reasonable rates) and (2) be written for full replacement cost of the property, with a deductible of no greater than 5% of the property value.  Lessor shall carry insurance on any furniture and furnishings which will become the property of Lessee at the expiration of the term and on all modular furniture installed in the Premises.  Insurance proceeds shall be payable to Lessor and Lessee as their interests may appear and be utilized for repair and restoration of the Premises.

(ii)    General liability insurance (written on ISO policy form CG 00 01 or its equivalent) with limits of not less than the following: (1) per occurrence and general aggregate amount of $5,000,000; (2) products/completed operations aggregate of $2,000,000 and (3) personal and advertising injury of $1,000,000.

(iii)    Failure by Lessor to maintain the insurance required by this Section and deliver evidence thereof as required by this Lease or to use any insurance proceeds to timely repair and restore the Premises shall constitute a material breach of this Lease

(d)    <u>Insurance Requirements</u>   All insurance policies required to be maintained by Lessor under this Lease shall be issued by insurance companies which have a Best's Rating of "AVII" or better and which are qualified to do business in the State of California.  All liability and property damage and other casualty policies of Lessee shall be written as primary policies, not contributing with, and not in excess of coverage which Lessor may carry.

(e)    <u>Certificates</u>   Lessor shall deliver to Lessee on the date of this Amendment and thereafter at least fifteen (15) days prior to expiration of any insurance required to be carried hereunder, certificates of insurance evidencing this coverage with limits not less than those specified above.  Certificates must document that each party has named the other as an additional insured (or its equivalent) on its general liability and property insurance policy, and that Lessee has been named a loss payee on Lessor's commercial property insurance policy, as required.  Further, all certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given to Lessee in the event of material change to, expiration or cancellation of the coverages or policies evidenced by the certificates.

(f)    <u>Waiver of Subrogation</u>.  Lessor and Lessee each hereby waive their rights of subrogation against one another to the extent it is covered by the property insurance policies required to be carried hereunder.  Lessor shall cause its insurance carriers to consent to the foregoing waiver of rights of subrogation against Lessee."

9.  NOTICES.  Paragraph 21 of the Lease is deleted in its entirely and in its place shall
appear the following language:

All notices and communications to any party hereunder shall be in writing and
shall be deemed properly given if delivered personally, sent by registered or certified
mail, postage prepaid, or by a recognized overnight commercial messenger providing
proof of delivery, facsimile (electronically confirmed).  Any notice so given shall be
deemed to have been given as of the date of delivery (whether accepted or refused)
established by U.S. Post Office return receipt or the overnight carrier's proof of delivery,
as the case may be.  Any such notice not so given shall be deemed given upon receipt
of the same by the party to whom the same is to be given.  Such notice and the
envelope containing the same shall be addressed as follows:

To the Lessor:
OPPIDAN, LLC
c/o The Charles Company
1888 Century Park East, Suite 450
Los Angeles, California 90067

To the Lessee:

Board of Supervisors
Kenneth Hahn Hall of Administration, Room 383
500 West Temple Street
Los Angeles, California 90012

With a copy to:

Chief Administrative Office
Real Estate Division
222 South Hill Street, 3rd Floor
Los Angeles, California 90012
Attention:  Director of Real Estate
Fax Number:  (213) 217-4971


10.  LESSOR'S DEFAULT.  Paragraph 38 of the Lease is added as follows:

"38.  Lessor Default.

a.    Remedies

In addition to the provisions for Lessor's default provided by Paragraphs 10,
27 and 31, which shall not be subject to this Paragraph 38,  Lessor shall be in default in
the performance of any obligation required to be performed by Lessor under this Lease
if Lessor has failed to perform such obligation within five (5) days after the giving of
written notice with respect thereto by Lessee (which notice shall be, if appropriate, the
same notice given under Section 10, 27 or 31; provided, however, that if the nature of
such default is such that the same cannot reasonably be cured within such five (5) day
period, Lessor shall not be deemed to be in default if Lessor shall within such period
commence such cure and thereafter diligently prosecute the same to completion.  If the
default by Lessor ("Lessor Default") is of such a nature that it materially and

substantially interferes with Lessee's occupancy and use of the Premises and if such Lessor Default is not cured within the foregoing cure period, then Lessee shall have the right, at its option, with or without further notice or demand of any kind to Lessor or any other person, to any one or more of the following described remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: (i) to remedy such default or breach and deduct the costs thereof (including but not limited to attorneys' fees) plus interest at the rate of ten (10%) per annum from the installments of Monthly Rent next falling due; (ii) to pursue the remedy of specific performance; (iii) to seek money damages for loss arising from Lessor's failure to discharge its obligations under this Lease or offset such damages against Monthly Rent next coming due; or (iv) to terminate this Lease.

b. <u>Waiver</u>

Nothing herein contained shall relieve Lessor from its duty to effect the repair, replacement, correction or maintenance required to restore any affected services, or to perform any other obligations to the standard prescribed in this Lease, nor shall this Section be construed to obligate Lessee to undertake any such work.

c. <u>Emergency</u>

Notwithstanding the foregoing cure period, Lessee may cure any default without notice where the failure promptly to cure such default would, in the reasonable opinion of Lessee, create or allow to persist an emergency condition or materially and adversely affect the operation of Lessee's business in the Premises.

<u>11.    INTERPRETATION.</u>    If there are any inconsistencies, variances or differences between any provision of the Lease and a provisions of this Amendment, the provisions of this Amendment will prevail and control. The Lease, as amended by this Amendment, is ratified, confirmed and approved. The terms "include" and "including" are not limiting and include the concept of "including but not limited to."

Signature page follows.

IN WITNESS WHEREOF, the Lessor has executed this Amendment or caused it to be
executed, and the County of Los Angeles by order of its Board of Supervisors, has
caused this Amendment to be executed on its behalf by the Chairman of said Board and
attested by the Clerk thereof the day, month, and year first above written.

LESSOR
By: Oppidan .LLC

By San Cam Inc. Managing Member, a California corporation,

By_____
          Mark Gabay, President

ATTESTED:

SACHI A. HAMAI
Executive Officer-Clerk
of the Board of Supervisors


Deputy

LESSEE

COUNTY OF LOS ANGELES



By _____
Zev Yaroslavsky
Chairman, Board of Supervisors

APPROVED AS TO FORM:

OFFICE OF RAYMOND G. FORTNER
COUNTY COUNSEL

Kathleen Dougherty Felice
Principal Deputy County Counsel

By

EXHIBIT "A"
<u>CLEANING AND MAINTENANCE SCHEDULE</u>

This list reflects the various cleaning and maintenance requirements for the leased office space.  Responsibility for this cleaning and maintenance service belongs to the Lessor.

<u>Daily</u>  (Monday through Friday)
1.    Carpets vacuumed.
2.    Composition floors dust-mopped.
3.    Waste baskets, other trash receptacles emptied.
4.    Chairs and waste baskets returned to proper position.
5.    Fingerprints removed from glass doors and partitions.
6.    Drinking fountains cleaned, sanitized and polished.
7.    Lavatories, toilets and toilet rooms cleaned and mopped.  Toilet supplies replenished.
8.    Bulb and tube replacements, as required.
9.    Graffiti expunged as needed within two (2) working days after notice by Lessee.
10.   Floors washed as needed.
11.   Kitchen/Lunchroom supplies replenished including paper supplies and soap.
12.   Provide Day Porter service a minimum of eight (8) hours per day, beyond normal janitorial service.

<u>Weekly</u>
1.    Low-reach areas, chair rungs, baseboards and insides of door-jambs dusted.
2.    Window sills, ledges and wood paneling and molding dusted.

<u>Monthly</u>
1.    Floors washed and waxed in uncarpeted office area.
2.    High-reach areas, door frames and tops of partitions dusted.
3.    Picture moldings and frames dusted.
4.    Wall vents and ceiling vents vacuumed.

<u>Quarterly</u>
Draperies or mini blinds cleaned as required, but not less frequently than Quarterly.

<u>Semi-Annually</u>

Windows washed as required inside and outside but not less frequently than twice annually.

<u>As Needed</u>
Carpets cleaned as required.  The sidewalks, driveways, parking areas and all means of access and egress for the demised Premises should be maintained in good repair, clean and safe condition at all times.  All lawns, shrubbery and foliage on the grounds of the demised Premises should be maintained in good condition and neat in appearance. Grass and shrubbery must be replanted as needed to maintain the grounds in good appearance and condition.

**FILED**

NOV 2 0 2006

CONNY B. McCORMACK, COUNTY CLERK

T. PEREA
DEPUTY

DATE POSTED – November 22, 2006

**NOTICE OF PREPARATION OF NEGATIVE DECLARATION**

This notice is provided as required by the California Environmental quality Act and California Administrative Code Title 14 Division 6, Section 15072 (a) (2) B.

A Negative Declaration has been prepared for this site based on an Initial Study which consists of completion and signing of an Environmental Information Form showing background information as follows:

1. <u>Name of Proponent</u> - County of Los Angeles
   Chief Administrative Office

2. <u>Address/Phone No.</u> - 222 South Hill Street, 3rd Floor
   Los Angeles, California 90012

   | Agent | Telephone |
   |---|---|
   | Thomas Shepos | (213) 974-4364 |

3. <u>Date Information Form Submitted</u>–        November 16, 2006

4. <u>Agency Requiring Information Form</u> -     Los Angeles County
   Chief Administrative Office
   Real Estate Division

5. <u>Name of Proposal, if Applicable</u> -

6. <u>Address of Facility Involved</u>–        2910 West Beverly Blvd.,
   Los Angeles, CA 90057

Interested parties may obtain a copy of the Negative Declaration and the completed Environmental Information Form/Initial Study by contacting the Real Property Agent indicated under 2 above and referring to the proposal by name or to the facility by address.

Si necesita informacion en espanol, por favor de comunicarse con Carlos Marquez, para asistencia en obtener una traduccion para el numero (213) 974-4163.

THIS NOTICE WAS POSTED
ON     NOV 2 0 2006
UNTIL     DEC 20 2006

REGISTRAR-RECORDER/COUNTY CLERK

06   0υ23240

## NEGATIVE DECLARATION

Department Name:       Public Social Services
Project:               Administrative Offices/ GAIN and Medi-Cal
                       Outreach

Pursuant to Section 15072, California Environmental Quality Act and California
Administrative Code Title 14, Division 6

1.    Description of Project

      The leasing of existing office space in an existing commercial building to be
      used by the County of Los Angeles, Department of Public Social Services as
      administrative office, and training space.

2.    a.    Location of Project (plot plan attached)

            2910 west Beverly Boulevard, Los Angeles, CA   90057

      b.    Name of Project Proponent

            County of Los Angeles
            Chief Administrative Office
            222 South Hill Street, 3rd Floor
            Los Angeles, CA 90012

3.    Finding for Negative Declaration

      It has been determined that this project will not have a significant effect on the
      environment based on information shown in the attached Environmental
      Information Form dated November 13, 2006 which constitutes the Initial Study
      of this project.

4.    Initial Study

      An Initial Study leading to this Negative Declaration has been prepared by the
      Chief Administrative Office and is attached hereto.

5.    Mitigation Measures Included in Project

      None required.

Date                   Real Property Agent         Telephone
November 13, 2006      Thomas Shepos               (213) 974-4363

06  0u23240

### COUNTY OF LOS ANGELES
### CHIEF ADMINISTRATIVE OFFICE

### FIVE-YEAR LEASE

### <u>NEGATIVE DECLARATION</u>

I.    <u>Location and Description of the Project</u>

The proposed project is for the County of Los Angeles to lease facilities at 2910 West Beverly Boulevard, Los Angeles, California, which will be used by the Department of Public Social Services. The office space now occupied by DPSS continues to house 227 staff providing job counseling to GAIN participants, houses Medi-Cal outstation eligibility and support staff that provide Medi-Cal services to participants at hospitals, clinics and health facilities.

The facility, located in the First Supervisorial District approximately 1.4 miles from the Los Angeles Civic Center, includes 42,288 square feet of office space and a 78,039 square foot parking structure.  DPSS shall have use of 210 off-street parking spaces for staff in addition to available parking for visitors.  The Landlord has no expansion plans beyond the scope of this project.

II.    <u>Finding of No Significant Effect</u>

Based on the attached initial study, it has been determined that the project will not have a significant effect on the environment.

III.    <u>Mitigation Measures</u>
None required.

06  0u23240