# Exhibit H

14714  Supplement No. 4

## AMENDMENT NO.4 TO LEASE NO.14714
## DEPARTMENT OF PUBLIC SOCIAL SERVICES
## 2910 WEST BEVERLY BOULEVARD, LOS ANGELES

This Amendment No. 4 to Lease No. 14714 ("Amendment") is made and entered into effective as of this ___20TH___ day of __February__, 2006 by and between OPPIDAN, LLC, a California limited liability company, ("Lessor"), and the COUNTY OF LOS ANGELES, a body politic and corporate, ("Lessee").

WHEREAS, the Oswin Company, a Partnership, ("Oswin") as previous owner of the property located at 2910 West Beverly Boulevard, Los Angeles, ("Property"), and Lessee entered into a Lease bearing No. 14714 dated March 14, 1969, whereby Oswin leased to Lessee approximately 42,288 gross square feet of office space together with 78,039 gross square feet of parking space for a term beginning September 1, 1970, and ending August 31, 1995 for use by the Department of Public Social Services ("Lease");

WHEREAS, Oswin and Lessee entered into an Amendment No. 1 to Lease No. 14714 on August 22, 1995 to extend the lease term to August 31, 1996 and thereafter the parties entered into an Amendment No.2 to Lease No. 14714 on October 29, 1996 to extend the lease term to August 31, 1999; and, thereafter entered into Amendment No. 3 to Lease No. 14714 on December 21, 1999 and Lessee exercised the option therein to further extend the Lease term to begin December 21, 1999 and end December 21, 2006; and Lessee has held over with Lessor's consent continuing the terms of the Lease and the Lessee's right to exercise the option to extend the term, and

WHEREAS, Lessor purchased the Property from Oswin in October of 2000 subject to the Lease, and Lessee is now desirous to exercise its option to further extend the term of the Lease for five (5) years, provided Lessor agrees to all terms and conditions as set forth herein.

NOW, THEREFORE, in consideration of the rents, covenants and agreements herein contained, and intended to be legally bound, Lessor and Lessee hereby covenant and agree the following amendments are effective upon the date above written:

1. TERM.    Paragraph 3. Term, is amended to provide that the term of the Lease will expire upon the later of December 21, 2011 or the date the Board of Supervisors of the County of Los Angeles has approved the extension of the term for five (5) years.

2. Option To Renew.    Paragraph 32. Options to Renew, of the Lease as amended, is amended to add the following:

" Option No 3 to Renew
Lessee shall have the option to renew this Lease for a third additional term of five (5) years commencing upon the later of December 21, 2011 or the date of exercise of Option No. 3 by the Board of Supervisors. In the event that Lessee desires to exercise

*COPIED FROM FINAL LOAN DOC FOLDER.

option not less than one-hundred twenty (120) days prior to December 21, 2011. The actual exercise of the option shall be only by the Board of Supervisors at any time prior to the later of December 21, 2011 or the expiration date of any holdover period pursuant to Paragraph 6. of this Lease. Time is of the essence. During such option term, Lessee shall continue to pay the Base Rent as adjusted in accordance with the terms of Paragraph 29 of this Lease.

3.   RENT. Paragraph 5,6, and 7., Rental of the Lease, are deleted in their entirety and in its place shall be substituted the following:

"Lessee shall continue to pay a monthly rent for the Premises in the amount of $66,815.04 per month, or $1.58 per square foot, ("Base Rent"). All rent payable under this Lease, as amended, subject to the adjustments described herein below, shall be due and payable without demand on or before the first day of each calendar month, except that Rent for any fractional calendar month at the commencement or end of the Term shall be prorated on a daily basis. Lessor shall file a Payment Voucher annually therefore, during the month of June, with the Auditor of the County of Los Angeles (the "County").

4.   MAINTENANCE AND REPAIRS. The Lease is amended by deleting Exhibit A and substituting therefore the Exhibit A attached hereto and incorporated herein by reference.

5.   RENTAL ADJUSTMENTS   Paragraph 29 Rental Adjustments of the Lease, is deleted in its entirety and in its place is substituted the following as new Paragraph 29:

"29.  Rental Adjustments.

(a)   CPI. On January 1, (the "Adjustment Date") and on every anniversary of the Adjustment Date thereafter, Base Rent shall be adjusted by applying the CPI Formula set forth below.

(b)   CPI Formula. The Index means the Consumer Price Index for all Urban Consumers for the Los Angeles-Riverside-Orange County area, all items published by the United States Department of Labor, Bureau of Labor Statistics (1982-84=100). The "CPI Formula" means Base Rent multiplied by a fraction, the numerator being the Index published for the month immediately preceding the month the adjustment is to be effective, and the denominator being the Index published for the month of December, 2006 ("Base Index").

If the Index is changed so that the Index differs from that used as of December, 2006, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the Index is discontinued or revised during the Term of this Lease, such other governmental Index or computation with which it is replaced shall be used in order to obtain substantially the same results as would be obtained if the Index had not been discontinued or revised.

(c)   Illustration of Formula. The formula for determining the new rent shall be as follows:

$$\frac{\text{New Index}}{\text{[Base Index]}} \times \$66,815.04 \text{ (Base Rent)}$$

± Amount needed to amortize Lessee's Additional Lessee Improvements, if any

± Amount needed to amortize change order costs, if any

= "Monthly Rent"

(d) <u>Limitations on CPI Adjustment</u>. Notwithstanding the foregoing, in no event shall the Base Rent CPI adjustment set forth above result in an annual rent increase greater than five percent (5%) of the Base Rent or less than three percent (3.0%) of the Base Rent

6. <u>CANCELLATION.</u> Paragraph 30, of the Lease is deleted in its entirety and in its place shall be substituted the following:

"Should the Lessee exercise its option to renew this Lease for five (5) years pursuant to Paragraph 32, Lessee shall have the right to cancel this Lease on or anytime after December 21, 2014, by giving Lessor not less than ninety (90) days prior written notice."

7. <u>PREMISES IMPROVEMENTS.</u> The Lease is amended by the addition of the following as new Paragraph 38. Alteration and Preparation of Premises:

"38. <u>Alteration and Preparation of Premises.</u> Lessor will cause, at his sole cost and expense, to be constructed at the Premises, interior and exterior improvements, to begin by February 19, 2007 and to be completed by June 19, 2007 within One Hundred Eighty (180) days of the commencement date as follows:

Replace Carpet throughout (approximately 30,000 sf) with carpet tile, installation includes lifting all modular furniture during installation.

Paint all interior walls, including hallways, common areas, restrooms, conference rooms, and lunch/ break rooms. Lessor not responsible to move and paint behind modular panels and or attached furniture.

HVAC-Project completion and Upgrade:

a) Furnish and install Boiler which meets or exceeds AQMD energy efficiency standards;

b) Furnish and Install a new Chiller Barrel (whole assembly);

c) Replace one compressor (which will restore HVAC system to 100% back-up;

d) Furnish and Install Honeywell controls via PC providing remote control access to the HVAC system;

e) Air Balance entire system; and

f) Provide quarterly maintenance contract for service and maintenance on the HVAC system during the term of the Lease.

Main Entrance Enclosure:

Furnish and install decorative, with random geometric design, wrought iron enclosure at the main entrance to the building.

8. INDEMNIFICATION. Paragraph 27 of the Lease as amended is hereby deleted in its entirety and in its place shall appear the following:

"27. Insurance And Indemnity.

(a) Lessee's Indemnity. Lessee shall indemnify, defend and hold Lessor harmless from and against all loss, cost and expense, including attorneys' fees, arising from any injury or damage to any person or property, occurring in or about the Building or Premises as a result of any negligent act or omission or willful misconduct of Lessee or its employees or arising from any breach or default under this Lease by Lessee. The foregoing provisions shall not be construed to make Lessee responsible for loss, damage, liability or expense resulting from injuries to third parties caused by the negligence or willful misconduct of Lessor, or its officers, contractors, licensees, agents, employees or invitees.

(b) Lessor's Indemnity Lessor shall indemnify, defend and hold Lessee harmless from and against all loss, cost and expense, including attorneys' fees, arising from any injury or damage to any person or property, occurring in or about the Building or Premises as a result of any negligent act, omission or willful misconduct of Lessor, or its officers, contractors, licensees, agents, employees, guests, or visitors or arising from any breach or default under this Lease by Lessor. The foregoing provisions shall not be construed to make Lessor responsible for loss, damage, liability or expense resulting from injuries to third parties caused by the negligence or willful misconduct of Lessee, or its officers, contractors, licensees, agents, employees or invitees.

(c) Lessor's Insurance. During the term of this Lease, Lessor shall maintain the following insurance:

(i) Commercial property insurance which shall (1) cover damage to Lessor's property, including improvements and betterments, from perils covered by the causes-of-loss special form (ISO form CP 10 30), and include ordinance or law coverage (and coverage against acts of terrorism to the extent such coverage is reasonably available and priced at commercially reasonable rates) and (2) be written for full replacement cost of the property, with a deductible of no greater than 5% of the property value. Lessor shall carry insurance on any furniture and furnishings which will become the property of Lessee at the expiration of the term and on all modular furniture installed in the Premises. Insurance proceeds shall be payable to Lessor and Lessee as their interests may appear and be utilized for repair and restoration of the Premises.

(ii) General liability insurance (written on ISO policy form CG 00 01 or its equivalent) with limits of not less than the following: (1) per occurrence and general aggregate amount of $5,000,000; (2) products/completed operations aggregate of $2,000,000 and (3) personal and advertising injury of $1,000,000.

(iii) Failure by Lessor to maintain the insurance required by this Section and deliver evidence thereof as required by this Lease or to use any insurance proceeds to timely repair and restore the Premises shall constitute a material breach of this Lease

(d) <u>Insurance Requirements</u> All insurance policies required to be maintained by Lessor under this Lease shall be issued by insurance companies which have a Best's Rating of "AVII" or better and which are qualified to do business in the State of California. All liability and property damage and other casualty policies of Lessee shall be written as primary policies, not contributing with, and not in excess of coverage which Lessor may carry.

(e) <u>Certificates</u> Lessor shall deliver to Lessee on the date of this Amendment and thereafter at least fifteen (15) days prior to expiration of any insurance required to be carried hereunder, certificates of insurance evidencing this coverage with limits not less than those specified above. Certificates must document that each party has named the other as an additional insured (or its equivalent) on its general liability and property insurance policy, and that Lessee has been named a loss payee on Lessor's commercial property insurance policy, as required. Further, all certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given to Lessee in the event of material change to, expiration or cancellation of the coverages or policies evidenced by the certificates.

(f) <u>Waiver of Subrogation</u>. Lessor and Lessee each hereby waive their rights of subrogation against one another to the extent it is covered by the property insurance policies required to be carried hereunder. Lessor shall cause its insurance carriers to consent to the foregoing waiver of rights of subrogation against Lessee."

9. NOTICES.  Paragraph 21 of the Lease is deleted in its entirely and in its place shall appear the following language:

All notices and communications to any party hereunder shall be in writing and shall be deemed properly given if delivered personally, sent by registered or certified mail, postage prepaid, or by a recognized overnight commercial messenger providing proof of delivery, facsimile (electronically confirmed).  Any notice so given shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.  Such notice and the envelope containing the same shall be addressed as follows:

To the Lessor:
OPPIDAN, LLC
c/o The Charles Company
1888 Century Park East, Suite 450
Los Angeles, California 90067

To the Lessee:

Board of Supervisors
Kenneth Hahn Hall of Administration, Room 383
500 West Temple Street
Los Angeles, California 90012

With a copy to:

Chief Administrative Office
Real Estate Division
222 South Hill Street, 3rd Floor
Los Angeles, California 90012
Attention:  Director of Real Estate
Fax Number:  (213) 217-4971


10.  LESSOR'S DEFAULT.  Paragraph 38 of the Lease is added as follows:

"38.  Lessor Default.

a.  Remedies

In addition to the provisions for Lessor's default provided by Paragraphs 10, 27 and 31, which shall not be subject to this Paragraph 38, Lessor shall be in default in the performance of any obligation required to be performed by Lessor under this Lease if Lessor has failed to perform such obligation within five (5) days after the giving of written notice with respect thereto by Lessee (which notice shall be, if appropriate, the same notice given under Section 10, 27 or 31; provided, however, that if the nature of such default is such that the same cannot reasonably be cured within such five (5) day period, Lessor shall not be deemed to be in default if Lessor shall within such period commence such cure and thereafter diligently prosecute the same to completion.  If the default by Lessor ("Lessor Default") is of such a nature that it materially and

substantially interferes with Lessee's occupancy and use of the Premises and if such Lessor Default is not cured within the foregoing cure period, then Lessee shall have the right, at its option, with or without further notice or demand of any kind to Lessor or any other person, to any one or more of the following described remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: (i) to remedy such default or breach and deduct the costs thereof (including but not limited to attorneys' fees) plus interest at the rate of ten (10%) per annum from the installments of Monthly Rent next falling due; (ii) to pursue the remedy of specific performance; (iii) to seek money damages for loss arising from Lessor's failure to discharge its obligations under this Lease or offset such damages against Monthly Rent next coming due; or (iv) to terminate this Lease.

b. Waiver

Nothing herein contained shall relieve Lessor from its duty to effect the repair, replacement, correction or maintenance required to restore any affected services, or to perform any other obligations to the standard prescribed in this Lease, nor shall this Section be construed to obligate Lessee to undertake any such work.

c. Emergency

Notwithstanding the foregoing cure period, Lessee may cure any default without notice where the failure promptly to cure such default would, in the reasonable opinion of Lessee, create or allow to persist an emergency condition or materially and adversely affect the operation of Lessee's business in the Premises.

11. INTERPRETATION.  If there are any inconsistencies, variances or differences between any provision of the Lease and a provisions of this Amendment, the provisions of this Amendment will prevail and control. The Lease, as amended by this Amendment, is ratified, confirmed and approved. The terms "include" and "including" are not limiting and include the concept of "including but not limited to."

Signature page follows.

IN WITNESS WHEREOF, the Lessor has executed this Amendment or caused it to be executed, and the County of Los Angeles by order of its Board of Supervisors, has caused this Amendment to be executed on its behalf by the Chairman of said Board and attested by the Clerk thereof the day, month, and year first above written.

LESSOR
By: Oppidan .LLC

By San Cam Inc. Managing Member, a California corporation,

By _____
Mark Gabay, President

ATTESTED:

SACHI A. HAMAI
Executive Officer-Clerk
of the Board of Supervisors

_____
Deputy

LESSEE

COUNTY OF LOS ANGELES

By _____
Zev Yaroslavsky
Chairman, Board of Supervisors

APPROVED AS TO FORM:

OFFICE OF RAYMOND G. FORTNER
COUNTY COUNSEL

Kathleen Dougherty Felice
Principal Deputy County Counsel

By _____

ADOPTED
BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

# 12         FEB 2 0 2007

SACHI A. HAMAI
EXECUTIVE OFFICER

EXHIBIT "A"
CLEANING AND MAINTENANCE SCHEDULE

This list reflects the various cleaning and maintenance requirements for the leased office space. Responsibility for this cleaning and maintenance service belongs to the Lessor.

Daily (Monday through Friday)
1. Carpets vacuumed.
2. Composition floors dust-mopped.
3. Waste baskets, other trash receptacles emptied.
4. Chairs and waste baskets returned to proper position.
5. Fingerprints removed from glass doors and partitions.
6. Drinking fountains cleaned, sanitized and polished.
7. Lavatories, toilets and toilet rooms cleaned and mopped. Toilet supplies replenished.
8. Bulb and tube replacements, as required.
9. Graffiti expunged as needed within two (2) working days after notice by Lessee.
10. Floors washed as needed.
11. Kitchen/Lunchroom supplies replenished including paper supplies and soap.
12. Provide Day Porter service a minimum of eight (8) hours per day, beyond normal janitorial service.

Weekly
1. Low-reach areas, chair rungs, baseboards and insides of door-jambs dusted.
2. Window sills, ledges and wood paneling and molding dusted.

Monthly
1. Floors washed and waxed in uncarpeted office area.
2. High-reach areas, door frames and tops of partitions dusted.
3. Picture moldings and frames dusted.
4. Wall vents and ceiling vents vacuumed.

Quarterly
Draperies or mini blinds cleaned as required, but not less frequently than Quarterly.

Semi-Annually

Windows washed as required inside and outside but not less frequently than twice annually.

### As Needed

Carpets cleaned as required. The sidewalks, driveways, parking areas and all means of access and egress for the demised Premises should be maintained in good repair, clean and safe condition at all times. All lawns, shrubbery and foliage on the grounds of the demised Premises should be maintained in good condition and neat in appearance. Grass and shrubbery must be replanted as needed to maintain the grounds in good appearance and condition.