FILED

Arman Gabaee
Fed. Reg. No. 76335-112
FCC Lompoc Camp
3705 West Farm Road
Lompoc, CA 93436

2024 SEP 16 AM 10: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff-Respondent, <br><br> vs. <br><br> ARMAN GABAEE, <br>     Defendant-Petitioner. | ) No. CR 18-00331-GW <br> )     CV 23-10627-GW <br> ) <br> ) **DEFENDANT'S REPLY TO GOVERNMENT'S** <br> ) **OPPOSITION TO DEFENDANT'S MOTION** <br> ) **TO VACATE, SET ASIDE, OR CORRECT** <br> ) **SENTENCE PURSUANT TO 28 U.S.C. § 2255** <br> ) <br> ) <br> ) Hearing Date: None Set <br> ) <br> ) <br> ) Judge: Hon. George Wu <br> ) |

    Defendant Arman Gabaee, a federal prisoner without counsel hereby files his Reply to the government's opposition "Redacted" to his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed on August 18, 2024 [Dkt. 18]. This Reply is timely.

    This motion is based on the attached exhibits Memorandum of Point and Authorities, accompanying exhibits, the files, and records in this case, and other such evidence or arguments as may be required by the Court.

1

In support of granting Defendant's relief, the following is submitted.

Respectfully submitted,

Dated 9/16/2024

_____
Arman Gabaee,
Defendant

# MEMORANDUM OF POINT AND AUTHORITIES

*"Make the lie big, make it simple, keep saying it, and eventually they will believe it."*

— Joseph Goebbels

## I. INTRODUCTION

In its rendition of its story, the government has once more intentionally lied and misled the Court and the public. They violated the Defendant's due process rights by serving him with a "redacted opposition" denying his constitutional right to confrontation. In doing such the government has introduced a new theory involving the Defendant's state of mind that was never alleged in the indictment. They have now attempted to introduce information out of context which was not a part of their complaint, indictment or facts set forth in the plea agreement. They once more have made allegations not supported by evidence. They continue to attack Defendant's good character without any documentation to support.

Notably, they have failed to address the Defendant's issues, which are the subject of his § 2255 motion. The Defendant has demonstrated that the government failed beyond a reasonable doubt to provide evidence to substantiate their conviction.

Specifically, the government has not addressed prosecutorial misconduct, lying under oath, false statements, and submissions of false and misleading documents which was the basis of the probable cause in the Criminal Complaint and Indictment. They used these falsities as the basis of the plea agreement which the government knew, if discovered, would reverse Defendant's conviction. Instead of complying with the law they continued to follow their false narrative committing more malfeasance.

The facts clearly show that Thomas Shepos was not charged with bribery and that the Defendant and Shepos were longtime friends.

The government then misled the Court, propping up the County as if they were the Defendant's only major tenant, using this theory as the only motivating factor in Defendant's relationship with Shepos, which is untrue. The facts herein reveal there was no $45 million-dollar new lease, it was all fabricated by the government. The lease was a 5-year renewal. The reality is that the County was a minor player in the

Defendant's overall business. These facts overwhelmingly show the County was reliant on the Defendant's properties because the County benefited through <u>below-market rents in ideal locations</u> for the County's needs.

The government has never identified one specific allegation charged in the indictment that; (a) Shepos provided non-public County information to defendant; (b) Shepos resolved issues between Defendant and County departments or agencies on terms favorable to Defendant; and (c) Shepos helped secure County leases for Defendant and negotiated terms in those leases that were beneficial to Defendant. The government has failed to identify any specific allegations made with dates, times, places and supporting evidence to support these allegations. Everything the government has alleged is baseless and not supported by any evidence submitted.

As Defendant has proven with documentation the government in a slight of hand intentionally altered the timeline. These false statements were intended to cover up the case agent's perjury and misconduct in the creation of a quid pro quo, which never existed. Defendant previously submitted exhibits that prove there was no quid pro quo, required under the bribery statute.

This lack of substantiation undermines the credibility of the government's claims and raises significant concerns about the fairness of the proceedings. The government intentionally failed to provide the Defendant with the unredacted copy of their opposition, denying due process.

The government claims that the fine they imposed on Defendant in the amount of $1,149,000 was just and cannot be challenged. The government did not have authority to impose a fine against the Defendant.

Defendant requests the Court for criminal referral to investigate the prosecutor's actions involved in their intentional and continued misconduct in this matter, or in the alternative for sanctions against all those involved including the case agents for this miscarriage of justice.

For these reasons and others set forth herein, Defendant's conviction must be reversed as an operation of law and the fine paid be returned including interest.

///

///

///

# ARGUMENT

## II. THE GOVERNMENT'S OPPOSITION HAS FAILED TO PRESENT EVIDENCE TO SUPPORT CONVICTION AND VIOLATED DUE PROCESS

### 1. Due Process Violations

Once more, the government has tried to game the system. They have used ex-parte applications to exclude the Defendant from various proceedings and, more blatantly, intentionally filed their "Redacted Opposition," excluding the Defendant from the process and the government's arguments; in doing this, the Defendant's right to due process has been blatantly and intentionally violated.

The Defendant asserts that the government's intentional failure to provide an unredacted copy of the opposition violates his due process rights under the Fifth and Fourteenth Amendments. Several critical Supreme Court and Ninth Circuit cases support this argument.

Under the Due Process Clause of the U.S. Constitution's Fifth and Fourteenth Amendments to the Constitution, a guarantee that no person shall be deprived of life, liberty, or property without due process of law. This includes the right to a fair hearing and access to all evidence favorable to the defense and the ability to confront their accusers.

In Brady v. Maryland, 373 U.S. 83 (1963), The Supreme Court held that the prosecution must disclose all evidence favorable to the accused that is material to guilt or punishment. Withholding such evidence violates due process; See Kyles v. Whitley, 514 U.S. 419 (1995): (Reinforcing the Brady ruling, emphasizing that the prosecution's duty to disclose evidence favorable to the accused is a fundamental aspect of due process); United States v. Bagley, 473 U.S. 667 (1985): Here, the Supreme Court extended the Brady rule, holding that evidence is material, and its suppression justifies a sanction if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In United States v. Kohring, 637 F.3d 895 (9th Cir. 2011), The Ninth Circuit found a due process violation where the government failed to disclose evidence that could have been used to impeach a key witness. This case underscores the importance of full disclosure to ensure fairness. See Smith v. City of Fontana, 818 F.2d 1411 (9th Cir. 1987): Although primarily dealing with familial relationships, this case

highlights the broader principle that government actions that obscure critical information can lead to due process violations.

2. **Application to the Present Case**

The government's intentional redaction of the opposition motion deprives the Defendant of critical information necessary for a fair hearing. This action violates the principles established in Brady, Kyles, and Bagley and the Ninth Circuit's ruling in Kohring. The redacted information could contain carefully crafted "out-of-context statements" used against the Defendant. Had these redacted statements been provided to the Defendant, they could prove exculpatory evidence in the correct context or information that could further impeach the credibility of the government's case.

It is important to note that Defendant has persistently requested copies of the tapes regarding the alleged conversations between Defendant and Shepos for over one year. Despite these repeated requests, the Defendant's attorneys have refused to provide him with the recordings and statements made Shepos by that is known to be favorable to Defendant's case. In fact, there is a witness statement made by Shepos that clearly stated that Defendant did not engage in any wrongdoing. Defendant's Attorney Marc A. Agnifilo has told Defendant he could not provide the requested discovery material because it pertained to the Mark Ridley Thomas prosecution, and it would violate a standing court order. The government has denied Defendant due process, and his attorneys have done the same. Nowhere in the docket can Defendant find a protective order or order sealing these conversations.

Based on the cases mentioned above law, Defendant's due process rights have been violated by the government's intentional failure to provide an unredacted copy of the opposition. This violation undermines the fairness of these hearings and warrants appropriate judicial remedies, including reversal of the conviction, and illustrates Defendant's attorney's actions as being below the constitutional standard outlined in Strickland v. Washington, 466 U.S. 668, 697 (1984).

///

///

3. **The Government Made Generalized Allegations Without Submitting Proof**

   A. **Shepos was a Low-Level County employee without authority.**

Defendant has proven that Shepos was a "Low-Level" County employee. The government's opposition contains broad and generalized statements that contain false and misleading allegations without detailing specific proof, incidents, or actions attributed to the Defendant's conduct. For example, the government claims that Shepos was a high-level county employee authorized to bind the County with various leases, is untrue.

The Defendant has previously provided exhibits which contain multiple witness statements from County employees who supervised Shepos during the relevant time period. These statements consistently indicated that Shepos was a low-level employee without the authority to bind the County.

Since 1994, long before Shepo's employment with the County in 2001, Defendant has had a total of nine (9) County leases over the years. All these leases were negotiated by someone other than Shepos. In a couple instances, the County was an existing tenant when Defendant purchased the property.

This information is evident on each lease in the government and Defendant's attorneys' possession. Shepos had no control over any of the approval processes, which involved nine (9) separate levels of approval. All beyond Shepos' control. Once the initial term sheet left the Real Estate Division, Shepos was no longer involved.

*The County requires the following process for lease approvals:*

The County has a detailed process for approving leases. Once a lease is accepted through the public bidding process and all initial steps are completed, it typically takes 9 to 18 months for the County Board of Supervisors to give final approval. During this period, each department listed below conducts an independent review of the lease, checking for errors, discrepancies, favoritism, and any abnormalities.

The steps are as follows:

(1) **The Leasing Agent:** (Shepos & others) packages the lease once the landlord has accepted the terms set forth by the County and submits it for review and approval.

(2) **Assistant Leasing Manager Real Estate Divisions:** Reviews lease and submits for approval.

(3) **Real Estate Section Manager:** Reviews and Approves and submits.

(4) **Real Estate Section Chief:** Reviews and Approves and submits.

(5) **The Director of the Real Estate Section:** Reviews, Approves, and submits.

(6) **Real Estate Commission:** (Independent Review Board) reviews, Approves and submits.

(7) **The Chief Administrative Officer:** Reviews, Approves, and submits.

(8) **The Chief Executive Officer:** Reviews, Approves, and submits.

(9) **Public Hearing Los Angeles County Supervisors** Review and Approves with unanimous consent.

As demonstrated above, nine (9) independent steps are mandated by the County for approval of a single lease. Once the lease is submitted to the Assistant Leasing Manager for review and approval Shepos is no longer involved. His sole purpose was to submit the proposed lease for approval. At that point Shepos was no longer involved.

For the government's allegations to be true, Shepos would have had to necessitate a vast county conspiracy involving nine (9) different County departments and multiple high-ranking employees, including department heads, the County Real Estate Commission, an independent advisory board, and County Board of Supervisors. The claim that Defendant bribed Shepos by paying $1,000 (that was actual living assistance) and that it was used to bribe these high-ranking employees, and everyone else including the Board of Supervisors is ludicrous, false, and unsubstantiated by any credible evidence.

### B. There was No Quid Pro Quo

The government continues to fail to provide evidence to dispute that they did not intentionally file false, misleading, and perjured statements to obtain the Criminal Complaint and Indictment.

Further, these false and perjured statements were used for misleading purposes to establish probable cause and court-ordered recordings. The government's false presentation and timeline alteration to fit its quid pro quo narrative further undermines the Defendant's ability to mount an effective defense. The Supreme Court in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), held that the presentation of false evidence or the

failure to correct false evidence violates due process. The Supreme Court in United States v. Gaudin, 515 U.S. 506 (1995), underscored the necessity for specific and material facts in fraud cases to be true and accurate. Otherwise, it violates due process. The Defendant's attorney knew or should have known these facts but failed to represent Defendant properly.

The allegation that a quid pro quo took place, and that FBI Agent Adkins confronted the Defendant is again false and lacks proof. Defendant submitted evidence that there was no bribe or quid pro quo, and Adkins arrived on the scene only after Defendant confirmed he was not purchasing any property.

The evidence submitted by Defendant about the timeline involving the Northern California property proves there was to be no purchase of any property. Documents show several days before Adkins visited Defendant's residence, and as submitted previously, Defendant took steps to confirm he was not interested in purchasing the property. This was evident from the Defendant's secretary's statements, which revealed that several days before Adkins's visit, she was instructed to cancel Defendant's trip to Northern California as he was no longer interested in purchasing the property. Further evidence supports Defendant was never going to purchase the property. This was evident by the lack of documentation as to a purchase. There was no formal offer, escrow, or documentation to prove there was a purchase. Nothing supports a quid pro quo.

No matter what the government alleged, they cannot dispute Defendant's submitted proof. The government intentionally misrepresented the timeline, and fabricated statements to make it appear there was no quid pro quo. See Spencer v. Krause (9th Cir. 2017): The 9th Circuit reversed a district court decision, holding that deliberate fabrication of evidence by a detective constituted prosecutorial misconduct.

In United States v. Sun-Diamond Growers of California, 526 U.S. 398 (1999) the Supreme Court clarified the requirements for proving quid pro quo in bribery cases. The case involved Sun-Diamond Growers, an agricultural trade association, which was charged with giving illegal gratuities to former Secretary of Agriculture Michael Espy.

The Court held that to sustain a conviction under the federal bribery statute, there must be a clear quid pro quo link between the gratuity received and the performance of a specific official act. This means

that the government must prove a direct connection between the thing of value given to a public official and a specific "official act" performed or to be performed by that official.

The ruling emphasized that simply giving gifts to an official because of their position is not enough to constitute bribery. There must be evidence that the gift was given in exchange for a specific favorable action by the official.

### C. Shepos Relationship with Defendant

It was widely known that Shepos and Defendant were friends. Shepos occasionally made breakfast for Defendant and his employees, and they often spent time together socially and with their families. FBI Agent Adkins confirmed this fact. Under oath, Adkin stated in a sworn statement:

*"From around that time to on or about April 11, 2017, Defendant gave Shepos monthly cash payments of approximately $1,000... The relationship between Shepos and Defendant changed shortly after Shepos began accepting these monthly payments. It went from a 'friendship to an improper business relationship,'..."* [Dkt. 1p.9 ¶ 10].

Adkins in April 2017 never said Defendant's friendship with Shepos was "illegal" it was only considered "an improper business relationship," or that Defendant had explicitly violated any law. All along, Adkins knew the Defendant did not commit bribery and no violation of law occurred, yet the government proceeded on anyway.

Shepos began cooperating with the government and the FBI in December 2016. Of course, unbeknownst to the Defendant, Shepos changed the relationship. Shepos was out to save himself. Shepos was never charged with bribery.

Ironically, in the government's discovery, Shepos said: "Defendant never did anything illegal or improper; it was he Shepos who committed wrongdoing." Shepos' statements are consistent with those statements made by high-ranking County employees who said Shepos was "a low-level county employee without authority" and "never saw Defendant involved in anything inappropriate about the leases. These

same County individuals also said they never saw any lease that was favorable to Defendant" and that "there was never nonpublic County information provided to Defendant."

Unbeknownst to the Defendant, Shepos began cooperating with the government in late 2016. The government pressured Shepos into entrapping the Defendant with a new lease for the Hawthorne Mall.

However, the Defendant and Shepos knew the 2000 lease called for a five-year renewal. The government had Shepos provide Defendant with a "fake" lease and inflated the total amount, making it approximately $45 million over ten years. This new lease was invalid. Subsequently, when the Defendant decided not to cooperate with the FBI in the Mark Ridley Thomas investigation, the government's case agent, Adkins, singled out the Defendant and created a false narrative about a Northern California property as a quid pro quo as revealed and selectively not presented by the government this taped conversation occurring a day before Adkins arrived at the Defendant's residence. This proves that Adkins knew the Defendant would not purchase the property and that there was no quid pro quo. Despite this, Adkins knowingly and intentionally altered the timeline to present false information to the Court in the criminal complaint and indictment, alleging that a bribery offense occurred when the facts proved otherwise.

The evidence submitted by Defendant clearly shows Defendant did not commit a quid pro quo. No bribery as defined under the statute, and reversal of conviction is mandated.

Even if one was to stretch the claim that the money provided to Shepos for living assistance was improper, it was not bribery and could only possibly be considered a gratuity.

### D. The Supreme Court's Snyder Decision

The Supreme Court recently made a significant interpretation involving the bribery statute as defined in Sun-Diamond Growers of California, The Court in Snyder v. United States, 603 U.S. ___ (2024), closely examined and accurately clarified the bribery statue as follows:

**Bribery** involves offering, giving, receiving, or soliciting something of value to influence the actions of an official or other person in a position of authority. There must be intent to influence the recipient's

11

actions in favor of the giver. The corrupt intent, which refers to the intent to influence the recipient's actions in favor of the giver, and the exchange occurs <u>before</u> the official act is performed.

**Gratuity** involves giving something of value to an official or person in authority as a reward for an action already taken, such as a bonus for a favorable decision or a gift for a successful project completion. The intent is to reward past actions, not influence future ones. The exchange occurs after the official act has been performed. While gratuities can be unethical or inappropriate and may violate specific regulations, they are not illegal unless they violate the statutes.

Under <u>Snyder</u>, the Defendant does not meet the legal definition of bribery. For example: Shepos did not have authority to bind the County. It was the County that received the benefit from Defendant's below market leases and records reveal that. Further, evidence confirms there was nothing provided by Shepos. There was no non-public information given to Defendant. No favorable deals for Defendant and there were no disputes settled in Defendant's favor. There was no new lease(s) with the County during this time, only the renewal of the Hawthorne Mall. The county extended their month-to-month stay for several more months, ultimately spending $25 million to relocate and doubling the rent they were paying in Hawthorne, out of spite.

Defendant's attorney failed to identify this, and other crucial facts outlined in Defendant's 2255. Had counsel investigated and provided effective assistance in presenting the evidence, there is no doubt the outcome would have been different. Under <u>Strickland</u>, Defendant has met the two prongs to prove his counsel was ineffective. The facts show that the counsel's performance was deficient, meaning it fell below an objective standard of reasonableness and prejudice, and that this deficient performance prejudiced the defense. This means that a reasonable probability exists that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

**E. Allegations of Illegal Acts**

In their continued character assassination of Defendant, the government makes new and unfounded statements that Defendant engaged in other fraudulent activities trying to prejudice the Court. Once more,

they have failed to specify the nature, time, and context of these alleged activities, which are false, misleading, and unsupported by any evidence. Further, the government is introducing allegations not set forth in the indictment. See United States v. Wright, (625 F.3d 583, 9th Cir. 2010): The Court found prosecutorial misconduct where the prosecutor introduced evidence not in the record and denigrated the defense, leading to a reversal of the conviction; Cf. United States v. Maloney, 755 F.3d 1044 (9th Cir. 2014): The 9th Circuit reversed a conviction based on the prosecutor's improper closing argument that discussed evidence not included in the trial record. Usher v. City of Los Angeles, 828 F.2d 556 (9th Cir. 1987) (holding a malicious prosecution claim could be stated where criminal charges were dismissed for lack of evidence).

### F. Lack of Specificity Violates Due Process Rights

This lack of specificity violates the Defendant's due process rights, as established in United States v. Cruikshank, 92 U.S. 542 (1875), where the Supreme Court held that an indictment must set forth the specific facts constituting the offense. The Ninth Circuit has consistently held that allegations must be specific to provide the Defendant with a fair opportunity to prepare a defense. In United States v. Cecil, 608 F.2d 1294 (9th Cir. 1979), the Court emphasized that vague and conclusory allegations are insufficient and must be dismissed. The government has failed to provide evidence to dispute that they did not intentionally file false and misleading statements to establish probable cause in the Criminal Complaint and Indictment.

Further, these false and perjured statements were used for misleading purposes to obtain the court-ordered recordings, which still did not produce fruit.

The government presented an alteration of the timeline to fit the government's narrative of a quid pro quo, further undermining the Defendant's ability to mount an effective defense. The Supreme Court in Napue v. Illinois, 360 U.S. 264 (1959), held that the presentation of false evidence or the failure to correct false evidence violates due process. The Supreme Court in United States v. Gaudin, 515 U.S. 506 (1995), underscored the necessity for specific and material facts in fraud cases to be true and accurate. Otherwise, it violates due process. The Defendant's attorney knew or should have known that the Defendant's discovery had these records, which are now submitted to prove there was no quid pro quo.

### G. Unsubstantiated allegations

The government never provided any specific information to substantiate that: (a) Shepos provided nonpublic County information to Defendant; (b) Shepos resolved issues between Defendant and County departments or agencies on terms favorable to Defendant; and (c) Shepos helped secure County leases for Defendant and negotiating terms in those leases that were beneficial to Defendant. Just the opposite is true.

Defendant has submitted evidence from high-ranking County employees that there was never anything improper, no nonpublic information was provided, Shepos never had the authority to bind the county with the lease, and there were no disputes resolved in the Defendants.

Further, Defendant's attorney failed to identify the absence of these facts and other crucial facts outlined in Defendant's 2255. Had counsel investigated and provided effective assistance in their representation, there is no doubt the outcome would have been different. Under Strickland, Defendant has met the two prongs to prove his counsel was ineffective. *Deficient Performance*: The facts show that counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and *Prejudice*: Defendant has demonstrated that the deficient performance prejudiced the defense. This means there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The government's use of conversations alleging the Defendant engaged in alleged fraudulent activities is without merit. The government never charged Defendant with such allegations and has not provided specific details regarding the nature, time, and context. This, coupled with the alteration of the timeline, violates the Defendant's due process rights. The Defendant respectfully requests the Court to dismiss the government's redacted opposition to violations of due process or, at a minimum, disregard these redacted statements and impose sever sanctions against the government for these violations.

### H. Hawthorne Mall was a Renewal Lease

The government wants the Court to believe that the Defendant solely relied on the County for its sources of income. Just the opposite is true. The County was a minor player in the Defendant's business.

14

Out of the hundreds of leases, the County, at best, was insignificant to his Defendant's overall business. It should be noted that from 2000 to 2016, Defendant did not enter into any new leases with the County.

The government knew all along that the Hawthorne Mall property lease was up for a 5-year renewal. However, as part of the entrapment, the government intentionally facilitated a fake lease and then put a $45 million price tag on it and advertised it to the public as fraud. The Defendant was adamant he only wanted the County to renew the lease.

### 4. **GOVERNMENT HAD NO AUTHORITY TO IMPOSE A FINE AGAINST DEFENDANT**

The government violated the law by imposing a fine, which it had no authority to impose as part of the Defendant's sentence. This is a reversible error. The authority to impose a fine on a defendant is vested in the federal courts, not by the government. Federal Courts have the power to impose fines as part of a criminal sentence under various statutes, such as 18 U.S. Code § 35711, not the government.

The Supreme Court in Ex parte Watkins, 32 U.S. 568 (1833), early on, established that federal courts have the authority to impose fines as part of their sentencing powers. The Supreme Court recognized the inherent power of federal courts to punish offenses through fines and imprisonment. United States v. Bajakajian, 524 U.S. 321 (1998). The Supreme Court held that the imposition of penalties must comply with the Eighth Amendment's Excessive Fines Clause. This case underscores the federal Court's authority to impose fines while ensuring they are not excessive. The government's imposition of over a 1.1-million-dollar fine was excessive and unauthorized by law. In United States v. Dubose, 146 F.3d 1141 (9th Cir. 1998), the Ninth Circuit affirmed that federal courts have the authority to impose fines as part of criminal sentencing, not the government. The Court emphasized that fines are a legitimate part of the sentencing process under federal law; United States v. Hankins, No. 15-30345 (9th Cir. 2017). This case highlighted the requirement for specific and detailed findings when imposing restitution, which is closely related to the imposition of fines. The Ninth Circuit affirmed the federal Court's authority to impose financial penalties as part of sentencing.

Statutory Authority supports the Court's inherent authority to impose fines. Under 18 U.S.C. § 3571 explicitly grants federal courts the authority to impose penalties for criminal offenses. It outlines the maximum penalties that can be imposed for various categories of offenses, providing a clear statutory basis for imposing penalties by federal courts. Also, 28 U.S.C. § 1927 allows federal courts to impose fines on attorneys who unreasonably and vexatiously multiply proceedings. It demonstrates the broader authority of federal courts to impose financial penalties beyond criminal sentencing. Federal courts also have inherent powers to impose fines and other sanctions to maintain order and ensure the proper administration of justice. This authority is recognized in various cases and legal principles, such as the power to punish contempt of Court. As the Defendant's 2255 proceedings involve these aspects of his conviction and sentencing, this is the proper venue to change the illegal and excessive fine.

The Defendant's attorney was ineffective because he knew or should have known that the government had no authority to impose this excessive and illegal fine. Defendant requests the Court to order the government to immediately refund with interest the illegal fine collected before his self-surrender.

5. **THE GOVERNMENT FAILED TO PROVE ITS CASE, AND REVERSAL OF CONVICTION IS REQUIRED**

The government has failed to support its case or prove that the Defendant was guilty of bribery, or any other offense as summarized below.

**A. Grounds for Reversal**

**Absence of Documentary Evidence**

The government has not provided any documentary evidence to support its claims. No financial records, emails, contracts, or other documents have been presented to substantiate allegations of fraud, misconduct, or the quid pro quo required for a bribery conviction. In contrast, the Defendant has submitted substantial evidence disproving the government's case.

///

///

**Lack of Witness Testimonies**

The government's opposition lacks references to witness testimonies or affidavits that could corroborate its allegations. Witness statements are crucial for establishing the credibility of claims in legal proceedings, yet none have been provided. Additionally, wiretap conversations are inadmissible as they were not part of the charging documents. Defendant on the other hand has submitted evidence to support granting relief.

**Reliance on Hearsay**

The government's allegations are based on hearsay rather than direct evidence. Reliance on second-hand information, which is generally inadmissible in court due to its lack of reliability and the inability to cross-examine sources, undermines the credibility of the government's case. For example, the government has not presented evidence that Shepos was a high-level county employee or had the authority to bind the County. The Defendant has submitted numerous documents proving Shepos was a low-level county employee.

**Speculative Assertions**

The government's opposition is filled with speculative assertions without any factual basis. For instance, the government suggests that the Defendant might have been involved in other unspecified illegal activities but provides no evidence to support these claims. This speculative approach unfairly tarnishes the Defendant's reputation, despite the submission of several hundred letters of support from the community.

**Failure to Meet Legal Standards**

The government's opposition fails to meet the legal standards required to substantiate allegations and comply with due process. Allegations must be supported by credible and concrete evidence according to established legal principles. The government's opposition does not meet this standard, rendering the allegations insufficient and unjust.

**B. Ineffective Assistance of Counsel**

The Defendant's claim of ineffective assistance of counsel is clear. The Defendant's attorneys failed to meet the minimum constitutional standards for effective assistance of counsel during a critical phase.

17

The submission of evidence herein by Defendant confirms that his attorneys knew or should have known about all issues brought in this 2255 motion. Because Defendant's attorneys failed to recognize these important facts of evidence, counsel's performance was deficient, and Defendant received inadequate representation. The Defendant has demonstrated that his attorney's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced him. There is a reasonable probability that, but for the attorney's errors, the Defendant would not have pleaded guilty and would have insisted on going to trial. See Strickland v. Washington, 466 U.S. 668 (1984).

In the case of Padilla v. Kentucky, 559 U.S. 356 (2010), the Supreme Court stressed the importance of plea negotiations, highlighting that a plea bargain is a crucial part of litigation with regard to the Sixth Amendment's right to effective assistance of counsel. This was reaffirmed in the cases of Lafler v. Cooper, 566 U.S. 156 (2012) and Missouri v. Frye, 566 U.S. 134 (2012).

In Lafler v. Cooper, the defendant rejected a plea offer due to incorrect advice from his attorney. The Court ruled that if ineffective counsel leads to the rejection of a plea offer, the defendant must demonstrate that there is a reasonable probability that the plea offer would have been accepted by the Court and that the outcome would have been more favorable than the actual judgment.

On the other hand, in Missouri v. Frye, the defendant's attorney failed to inform him of a plea offer, which subsequently expired. The Court held that the Sixth Amendment's right to effective assistance of counsel extends to considering plea offers that lapse or are rejected. The defendant must show that the outcome would have been different if the plea offer had been communicated and accepted.

These cases emphasize the significance of competent legal advice during the plea-bargaining process, as it is a critical stage of criminal proceedings. As discussed in the Defendant's 2255 petition, it is evident from the record that the Defendant didn't want to proceed with the change of plea. Instead, it was the Defendant's attorney who insisted that he plead guilty. With the evidence presented, it is clear that the defendant's attorney's representation fell below the constitutional standard for effective assistance of counsel.

Over the past 70 years, the Court has emphasized that lawyers must provide clients with their informed opinion on what plea should be entered, reinforcing the need for effective assistance of counsel. Lawyers must fully comprehend every aspect of a defendant's case before offering advice on whether to plead guilty (Von Moltke v. Gillies, 332 U.S. 708 (1948)).

It is undeniable from the facts presented herein that counsel was ineffective, and the advice given to the Defendant was below the constitutional standard.

### III. CONCLUSION

For all the foregoing reasons and conclusions of law, Defendant Arman Gabaee's 2255 Motion should be granted, Defendant's conviction should be reversed, and his fine should be returned.

Respectfully submitted,



Dated: 9/16/2024

_____
Arman Gabaee,
Defendant.

# CERTIFICATE OF SERVICE

I, Elenor Gabay, am over the age of 18 years and I am not a party to this action. I hereby certify that on this 17 day of September 2024, that I sent the foregoing via first-class postage, prepaid or other delivery charges prepaid, by depositing said documents herein listed with the United States Postal Service, for mailing copies of the foregoing:

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

To the following individual(s), party(s) and/or entity(s):

United States Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, CA 90012

I certify under the penalty of perjury that the foregoing is true and correct.

Elenor Gabay